[No. 3,215.]

GEORGE K. TAYLOR, ADMINISTRATOR OF THE ESTATE OF CHARLES J. MARTIN, DECEASED, *v.* THE WESTERN PACIFIC RAILROAD COMPANY.

| 45 | 323 |
|----|-----|
| 78 | 124 |
| 45 | 323 |
| 82 | 81 |
| 45 | 323 |
| 86 | 561 |
| 45 | 323 |
| 110 | 416 |
| 45 | 323 |
| 116 | 276 |

PEREMPTORY CHALLENGE TO JURORS.—In a civil action a party is not bound to exercise his right of peremptory challenge to jurors, until there are in the jury box twelve persons whom the Court has adjudged to be competent jurors.

DAMAGES FOR CAUSING DEATH OF PARENT OR HUSBAND.—Under the third section of the Act of April 26th, 1862, relative to compensation for death caused by the wrongful act or negligence of another, the jury or Court should assess such damages as will be a just compensation to the surviving widow and children for the death of the husband and parent; but if the widow dies before the trial of the action, the question of compensation to her no longer exists, and proof on that point is irrelevant to the issues, and has nothing to do with the controversy; and the only question left to be determined in relation to damages is, what will be a just compensation to the children for the loss of the father.

IDEM.—The damages to which the children are entitled in such case are not to be arrived at by determining, first, what would have been a just com-

pensation to the widow and children, and subtracting from this the sum to which the widow would have been entitled had she lived, but the fact that there had been a surviving widow is to be left entirely out of the case.

EVIDENCE IN SUIT FOR DAMAGES.—In an action for damages, resulting from the death of a parent and husband, caused by the wrongful act or negligence of the defendant, evidence as to the business, education, and habits of sobriety and economy of the deceased is admissible.

LIABILITY OF RAILROAD COMPANY FOR NEGLIGENCE OF AGENT.—If a railroad company, whose road forms a junction with another road, entrusts a person employed and paid by such other road with the business of attending to its trains at such junction, the fact that he was employed by the other company does not release it for damages caused by his negligence.

IDEM.—If a railroad company is sued for damages alleged to have been caused by the incompetency of its agent, the question should be left to the jury whether the company used all reasonable precautions to ascertain the agent's competency before employing him, but were, nevertheless, deceived by the fradulent practices of the agent.

SUBSTITUTION OF PLAINTIFF BY EX PARTE ORDER.—On the death of the plaintiff, the Court may, by an ex parte order, substitute his representative as plaintiff.

APPEAL from the District Court of the Third Judicial District, County of Alameda.

The defendant was the owner of a railroad extending from the City of Oakland, Alameda County, to Sacramento, a distance of about one hundred and thirty miles. The San Francisco and Alameda Railroad Company owned a railroad extending from Alameda, Alameda County, to Haywards, a distance of about twenty miles. Alameda and Oakland are both on the Bay of San Francisco, across from the City of San Francisco, and Alameda is about two miles south of Oakland. At Simpson's Station, about four miles from Oakland, the two railroads joined, and the Western Pacific Company used the road of the other company from that station for about four miles, where it turned off. On the 14th of November, 1869, while the cars of the defendant were running south on that portion of the San Francisco and Alameda Railroad used by both companies, they collided with the cars of the other company which were running in the oppo-

site direction. Charles J. Martin, who was employed as a fireman by the San Francisco and Alameda Railroad Company, at a salary of nine hundred dollars a year, was killed by the collision. He left a widow and five infant children. The widow was appointed administratrix, and, on the 31st day of January, 1870, commenced this action, under the Act of April 26th, 1862, requiring compensation to next of kin for death caused by the wrongful act, neglect, or default of another, to recover compensation for the death of Martin. Sarah A. Martin, the widow, having died, letters of administration were issued to George K. Taylor upon the unadministered estate of Charles J. Martin, deceased, and on the 17th day of October, 1870, on the ex parte application of A. H. Griffith, attorney for Sarah A. Martin, said Taylor was substituted as plaintiff in the action. The defendant afterwards moved to set aside the order of substitution, and the Court, on the 24th day of March, 1871, denied the motion.

In impaneling a jury to try the cause, the Clerk drew the names of twelve persons as jurors, who were examined as to their competency, and three were challenged and discharged for cause. The Court then required the parties, if they desired to challenge peremptorily any of the nine remaining jurors, to exercise this right of peremptory challenge at this time, and before the other three jurors were called. To this the counsel for the defendant objected, and thereupon challenged peremptorily two of the nine jurors. Other jurors were then called and the defendant made two more peremptory challenges, thus exhausting its peremptory challenges. The twelve jurors were then sworn to try the cause. The jury returned a verdict for the plaintiff for nine thousand dollars, and judgment was rendered for that sum. The defendant appealed from the judgment and from an order denying a new trial.

The other facts are stated in the opinion.

*S. M. Wilson* and *McAllister & Bergin*, for Appellant.

Although under the new practice a party may be substituted on motion, yet it can only be on the voluntary appearance of the adverse original party, or after the service upon such party of a *scire facias.* (*Fine* v. *Gray*, 19 Mis. R. 33, 36.)

A motion to substitute a party to an action in the place of a deceased party, is not an ex parte motion, but must be made upon notice. (*Howard* v. *Taylor*, 5 Duer R. 604; 2 Whittaker's Practice, 3d ed., Sec. 192, p. 211.)

The Court erred in compelling defendant's counsel to exercise defendant's right of peremptory challenge as to the jury, when there were only nine persons in the jury box, and before all challenges of the jurors for cause had been disposed of, and before the balance of the jury had been called. (*People* v. *Jenks*, 24 Cal. 11–14; *People* v. *Scroggins*, 37 Cal. 678, 681; *Spencer* v. *De France*, 3 Green, Iowa R. 217, 218; *Smith* v. *The State*, 4 Green, Iowa R. 189, 190; *Hartzell* v. *The Commonwealth*, 40 Penn. State R. 466, 467.)

The death of Sarah A. Martin, widow of Charles J. Martin, pending the suit, was a fact to be considered by the jury, in estimating damages for the plaintiff.

The statute under which this action is prosecuted is an innovation upon the common law. The right and the remedy are only coextensive with the terms of the statute. It created a right for the exclusive benefit of those named in the statute, and one that is peculiarly and exclusively personal to the parties so named. The language of the statute is, that "the amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person." (Stats. 1862, p. 448.)

When, then, the widow ceases to exist, the right of action must likewise cease, for the recovery on her part was designed for her exclusive benefit. When the widow dies,

the amount of any recovery must, under the statute, abate accordingly. For it will be borne in mind that the purpose was not to create general assets for the benefit of the next of kin, or the heirs of the widow, but simply and solely to provide her personally with an equivalent for the personal support and comfort to which she was entitled from the deceased. In other words, the amount of the recovery is purely personal, and dies with the person. *Actio personalis moritur cum persona.*

*A. H. Griffith,* for Respondent.

"An action shall not abate by the death or other disability of a party, * * * if the cause of action survives. But the Court, on motion, may allow the action to be continued by or against his representatives." (Practice Act, Sec. 16.)

The section above referred to clearly contemplates an ex parte motion. It simply requires a suggestion of the death of the plaintiff, and a motion that the cause be continued in the name of the representative. It is regular and proper to suggest the death of a party in any Court and at any stage of the proceedings. (*Judson* v. *Love,* 35 Cal. 469; *Gregory* v. *Haynes,* 13 Cal. 594; id. 21; id. 446; *Black* v. *Shaw,* 20 Cal. 68.)

The substitution cannot militate against the rights of the defendant. The forty-eighth section of the Practice Act expressly provides that a party shall not be deprived of any of the benefits of his defense by the death of the plaintiff. The sixteenth section, above referred to, permits a representative to come in voluntarily at any stage of the proceedings. It is a right conferred upon the representatives, and no notice or affidavit is required.

The suggestion of the death of a party to a suit is a mere matter of form, to prevent the abatement where the cause of action survives. It may be made by any party, or if not made at all the judgment is not necessarily invalid. (*Stoet-*

*zell* v. *Fullerton,* 44 Ill. 108.) The death of a party may be suggested after the close of the evidence, and his executor made a party to the suit, it being sufficient to have a party at the time of the verdict and judgment. (*Mead* v. *Rutledge,* 11 Texas, 44 ; *Moor* v. *Rand, administratrix, etc.,* 1 Wis. 245.)

The Court did not err in admitting evidence of the character of the deceased, his education, etc.

The language of the statute is: " In every such action the jury may give such damages, pecuniary and exemplary, as they shall deem fair and just." The pecuniary damages are such as the recipients are deprived of by the death of the deceased, and the jury may, in addition, give exemplary.

How are the pecuniary damages to be estimated? There is no justice in establishing a fixed pecuniary standard, to apply to each man's life. It cannot be contended that a spendthrift, one who squanders his income, is the standard of the pecuniary injury the widow and next of kin sustains in the loss of a husband and father. (*Macon and Western Railroad Co.* v. *Johnson,* 38 Ga. 409; *Catawassa Railroad Co.* v. *Armstrong,* 52 Pa. St. 282.)

It is contended that the widow having deceased pending the suit, one half of the damages abated. We most respectfully submit such is not the law. If the argument of appellant is correct, then in a case where there was a widow and one child surviving the deceased, and both were to die pending the suit, the railroad company would escape all damages. The widow's one half would go to the railroad, and the same disposition would follow as to the child's one half; neither reason or the law tolerates such an absurdity. We have already seen that the action does not abate by the death of the plaintiff (in this case the plaintiff was the widow). It would certainly involve an anomolous absurdity, to say in one breath that the cause of action does not abate, and in the next that the benefits of the action do. The

law tolerates no such absurdity. The statute uses the conjunctive form and allows an action for the benefit of the widow and next of kin; the action can be sustained where there is a widow but no kindred of the deceased, or where he leaves kindred but no widow. The right to it becomes fixed by the death of the husband, and at his death. The only contingency is as to time of payment, that depends of course upon a settlement or recovery. If her right depended upon the fact of her being alive at the time of the judgment in a lawsuit, there could be no settlement with her which would be safe for the company. The person for whose benefit the recovery is to be had has a vested right in such recovery from the moment of the death, and if he dies before judgment is had his heirs take the benefit. (*Waldo v. Goodsell,* 33 Ct. 432; *Goodsell, Administrator,* v. *H. & N. H. R. R. Co.,* 33 Ct. 432.)

By the Court, CROCKETT, J.:

In impaneling the jury in this case the Clerk drew from the jury box the names of twelve persons as jurors, all of whom appeared and were examined as to their competency. Three of them were challenged for cause, and the challenges were allowed. The Court then required the parties, if they desired to challenge peremptorily one or more of the remaining nine jurors, to do it at that stage of the proceeding, and before the panel was filled by calling three additional jurors for examination in place of those who had been challenged for cause. The counsel for the defendant objected to this course of proceeding, and insisted that he was not bound to exercise his right of peremptory challenge as to any until there were in the box twelve persons whom the Court had adjudged to be competent jurors. But the Court overruled the objection, and compelled the defendant to exercise his

right of peremptory challenge as to the nine jurors at that time, if at all; and thereupon the counsel excepted to this ruling, and challenged peremptorily two of the nine persons. Other jurors were then called and examined as to their competency, some of whom were excused for cause and two were challenged peremptorily by the defendant, whose peremptory challenges were thus exhausted. The whole twelve were then sworn to try the cause.

The ruling of the Court in compelling the defendant to exercise the right of peremptory challenge, when there were only nine jurors in the box, is assigned as error on this appeal. Section one hundred and fifty-nine of the Civil Practice Act prescribes the method of impaneling a jury in a civil action, and provides that when the action is called for trial the Clerk shall prepare separate ballots, containing the names of the jurors summoned, who have appeared and not been excused, and deposit them in a box. "He shall then draw from the box twelve names, and the persons whose names are drawn shall constitute the jury. If the ballots become exhausted before the jury is complete, or if from any cause a juror, or jurors, be excused or discharged, the Sheriff shall summon, under the direction of the Court, from the citizens of the county and not from bystanders, so many qualified persons as may be necessary to complete the jury." Section one hundred and sixty provides that "as soon as the jury is completed, an oath or affirmation shall be administered to the jurors," etc. The next three succeeding sections provide for challenges to the jurors, either peremptorily or for cause; but do not specify at what particular stage of the proceeding a peremptory challenge must or may be interposed.

In *People* v. *Scoggins,* 37 Cal. 679, we had occasion to construe sections one hundred and fifty-nine and one hundred and sixty of the Civil Practice Act; and we say, "in a civil action each party has the right to examine the whole twelve,

before exercising his right of peremptory challenge as to any, and if some are excused for cause, the deficiency must be supplied with other names, who may in like manner be examined, until there shall be found in the box twelve men, whom the Court shall adjudge to be competent and qualified jurors; and thereupon each party may exercise his right of peremptory challenge. But neither can be required to exercise it prior to this stage of the proceedings. The theory of the law probably is that the right to challenge peremptorily cannot be exercised so judiciously until the panel is filled with competent and qualified jurors, of whom each party is allowed to reject a certain number without assigning any reason therefor." I am convinced this is the proper interpretation of these sections, and that the practice here indicated is the correct one. If a different rule prevailed, the right of peremptory challenge might and often would be so fettered as to render it of but little practical value. If, for example, eleven of the twelve jurors whose names are first drawn should be successfully challenged for cause, and if the parties should then be forced to exercise the right of peremptory challenge, as to the remaining juror, being ignorant, of course, of the names of the eleven jurors next to be presented, it is clear that the range within which this valuable right would thus be limited would be so narrow as to be of no practical utility. If the twelfth juror in the case supposed should be accepted, it would be the duty of the Clerk to draw from the box eleven other names to complete the panel; and if ten of those should be challenged for cause, only one would remain, in respect to whom the parties would again be compelled to exercise the right of peremptory challenge. This proceeding might be repeated until the peremptory challenges were exhausted, and the result would be that in every instance the party had been forced to exercise his right of challenge when only one juror was before him. This would so hamper the right as to ren-

der it practically valueless.  As we have already seen, none of the jurors are to be sworn to try the cause until "the jury is completed," and at any time before the jury is sworn either party may exercise the right of peremptory challenge, but neither can be compelled to do so "until there shall be found in the box twelve men, whom the Court shall adjudge to be competent and qualified jurors." In criminal cases the Criminal Practice Act prescribes a different rule, as was decided in *People* v. *Scoggins, supra.*

The judgment must be reversed for this error, but there are several questions presented on the appeal, which, though not necessary to be now decided, will doubtless arise on another trial, and had, therefore, better be disposed of.

The most important of these arises on several instructions to the jury, which were asked on behalf of the defendant, and refused by the Court.  The proposition embodied in these instructions, is, substantially, that inasmuch as Charles J. Martin, deceased, when he was killed by the collision on the railroad, left a widow, who subsequently died, during the pendency of this action, the jury must take that fact into consideration; and in estimating the damages will award only half as much for the benefit of the surviving children of the deceased father as they would have awarded for the benefit of the widow and children jointly, in case the widow still were living.  The theory of the defense on this point is, that under the statute, the recovery is for the joint benefit of the widow and children, if there be a widow; and that if she die before the judgment is recovered, her share of the damages lapses, and is extinguished, and should be deducted from the gross amount which would otherwise be awarded by the jury.  The third section of the Act of April 26th, 1862 (Stats. 1862, p. 448), provides that an action of this character shall be brought in the name of the personal representative of the deceased; "and the amount recovered in every such action shall be for the exclusive benefit of the

widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin in the proportions provided by law in relation to the distribution of personal property left by persons dying intestate; and in every such action the jury may give such damages, pecuniary and exemplary, as they shall deem fair and just, and may take into consideration the pecuniary injury resulting from such death to the wife and next of kin of such deceased person." Considering the evil intended to be remedied by this statute, it is obvious, I think, that the amount of the recovery is not to be affected by the question whether or not the deceased left a widow, or if so, whether she survived until the trial of the action. The jury is authorized to take into consideration the pecuniary injury resulting to those who were most nearly related to the deceased, and who in the ordinary course of human affairs would probably have been the most benefited by his future labors if he had lived. If he left a widow, she would, perhaps, have been the principal recipient of these benefits; and if there were children, they would probably have received the remainder. But if there be no widow, the whole of his earnings would justly and naturally go to the children. The statute intends the recovery to be a humane provision for those who have lost their natural protector, through the negligence of another; and when the recovery is had, it is to be distributed exclusively to the widow and children, if the widow be then living, and if not, then wholly to the children, if there be any, and if there be no children, then to the next of kin.

But in either event, it does not concern the defendant whether there be a surviving widow to participate in the distribution of the fund. If there be no surviving widow the result will be, not that the amount of the recovery will or ought for that reason to be diminished, but only that it will be distributed wholly to the next of kin. The instructions on this point were therefore properly refused.

Another point made at the trial was, that the Court, against the objection of the defendant, admitted evidence as to the business education of the deceased, and as to his habits of sobriety and economy. But I think the evidence was competent and pertinent. It tended to prove that his earnings, if he had lived, would have been more valuable to his family than if he had been an uneducated, drunken spendthrift.

Another point made by the defense is, that the collision, by means of which Martin lost his life, was caused by the carelessness or incompetency of Kane, the switchman, and that he and Martin were both in the employment of the San Francisco and Alameda Railroad Company, and not of this defendant. It is, therefore, claimed that the defendant is not liable for Kane's acts. But the evidence tends to show that Kane was furnished by the defendant with a joint time-table of the two roads, and was intrusted with the business of attending the switch at the junction, and was relied upon for information as to whether the Alameda train had passed. It is immaterial by which company he was paid, if he was intrusted by the defendant with these responsible duties.

I do not propose to examine particularly the charge of the Court to the jury; but some portions of it, I think, were not sufficiently guarded, and particularly that portion in which the jury is told that if the switchman could not read when the time-table was placed in his hands by the defendant, this of itself was an act of negligence, which made the defendant liable, if the switchman's ignorance or incapacity in that respect contributed to the death of the deceased. Undoubtedly it would have been gross negligence to knowingly place at an important post like this a switchman who could not read the time-table, and the negligence would have been equally great if the defendant took no reasonable precaution to ascertain whether Kane was a competent man for the position. On the other hand, it may be that all

reasonable precautions were taken to ascertain Kane's competency and fitness for the place, but that the defendant was nevertheless deceived by fraudulent practices on the part of Kane or others, and was not justly chargeable with negligence under the particular circumstances. The question of negligence in this respect should have been left to the jury under proper instructions from the Court.

Judgment reversed and cause remanded for a new trial.

[The foregoing opinion was delivered at the October Term, 1872. A rehearing was granted, and the following opinion, modifying the first, was delivered at the January Term, 1873.]

By the COURT:

We adhere to the views expressed in the opinion heretofore delivered in this cause, in respect to the mode in which the parties are entitled to exercise the right of peremptory challenge, in impaneling juries in civil actions, and we do not regard the denial of the right by the Court below as a harmless error, of which the defendants should not be heard to complain in this Court. But the argument on the rehearing has convinced us that the views expressed in the former opinion in respect to the second point therein discussed ought to be somewhat modified. It was intended by the statute to compel a person through whose negligence another was killed, to provide a fair and just compensation to the surviving widow and children, if there were any, and if not, then to the next of kin, for the injury they suffered from the death of the deceased. If there were a large number of minor children who were entitled to be maintained and educated by their deceased father, the recovery should be larger than if there was but one child. Children have a *right* to demand from the father a comfortable support and a reason-

ably good education until they shall arrive at a sufficient age to maintain themselves. If the father, whilst able to perform this duty towards his children, loses his life through the negligence of another, it was the intention of the statute to compel the offending party to make a fair and just compensation for the injury. To accomplish that end would require a larger sum for a numerous family than if it consisted of but one or two persons. In like manner, if there be a surviving widow, who, if her husband had lived, would have been entitled to a support from him, appropriate to his circumstances and condition in life, she would be entitled to be fairly and justly compensated for the loss in this respect which she suffered by his death. But on the death of the widow before the action is tried, the loss which she suffered ceases to be an element in the computation of damages. The defendant is exonerated from contributing towards her future support, for the obvious reason that she has ceased to exist. The amount of damages which the administrator might have been entitled to recover had she been living has nothing to do with the present controversy. The question of compensation to her no longer exists, and proof on that point would be wholly irrelevant to any issue in the cause. The only question to be determined, so far as the quantum of damages is concerned, is what sum will be a fair and just compensation to the *children* for the loss they have suffered by the death of their father. To attempt to reach this conclusion, by first ascertaining what would have been a just compensation to the widow and children jointly, had she been still living, and then subtracting from the gross sum the proportion to which the widow would have been entitled if she had lived, would tend only to confuse the jury and would require the introduction of proofs on a topic wholly foreign to the case. The instructions which the defendant asked on this point were therefore properly refused.

Another point urged by the defendant is, that the Court

erred in permitting the present plaintiff to be substituted by an ex parte order, as plaintiff in the action on the death of Mrs. Martin, the former administratrix. It has been the uniform practice in this State from its organization, so far as we are advised, to permit the substitution to be made, on a suggestion of the death of the former party and satisfactory proof on an ex parte motion, of the appointment and quali- fication of the administrator. We are not aware that any inconvenience or injustice has resulted from this practice, and we see no good reason for changing it. As was said by Chief Justice MARSHALL in *Wilson* v. *Cadmon's Exr.*, 3 Cranch, 193: "If the Court has unguardedly permitted a person to prosecute who has not given satisfactory evidence of his right to do so, it possesses the means of preventing any mischief from the inadvertence, and will undoubtedly employ those means."

The opinion heretofore delivered will stand as the opinion of the Court, except as herein modified.

Judgment reversed, and cause remanded for a new trial.