JUDY BURTON v. G., H. & S. A. R'y Co.

(Case No. 5139.)

1. DEPOSITIONS.— Either party to a cause has a right to obtain the commission and take the deposition of a witness to whom interrogatories and cross-interrogatories have been propounded and filed, when notice of the intention to take the deposition has been given.

2. SAME.— The fact that the officer who took the deposition of a witness occupied the same room with an attorney for one of the parties, or that he was himself an attorney for one of the parties in other cases, affords no ground for suppressing the deposition.

3. DAMAGES — MASTER AND SERVANT — RAILROAD COMPANY.— In a suit against a railway company for damages caused from personal injuries inflicted by the alleged negligence of the employees on a railway train, it was shown that both the train and the road belonged to the company, though the road had not been formally received from the contractors who constructed it. The engineer, conductor and employees were, when the accident occurred, employed and paid by the company, and could be discharged on complaint of the contractor. *Held:*

    (1) That these facts, unexplained, would make the company liable for the negligence of the engineer and its other employees on the train.

    (2) That if the train was run by the company with its own employees, for the purpose of transporting construction material for the contractors, the company would be responsible to any one not an employee for injury received by the negligence of those operating the train, even though the contractors had the right to determine when, where and to what extent supplies should be transported, and to that extent had the control of the company's train and employees.

    (3) It would seem that, even if the employees operating the train, who were employed and could be discharged by the company alone, were yet operating the train in transporting supplies according to the directions, and subject to the will, of the contractors, they would still be the servants of the company, which would be responsible in damages for their negligence. Citing *Quarman v. Burnett,* 6 M. & W., 499; *Michael v. Stanton,* 3 Hun, 462, and other cases noted in the opinion.

    (4) If, for his own protection, the owner reserves over that which he permits to be used by another the essential powers of a master, it is but just that he should be held to sustain that relationship when the rights of others, affected by the negligence of those selected, paid and kept in his employment, are brought in question.

4. DISTINGUISHED.— This case distinguished from *Cunningham v. Railroad Co.,* 51 Tex., 509.

APPEAL from Bexar. Tried below before the Hon. Geo. H. Noonan.

Mrs. Judy Burton, as surviving widow of King Burton, and as administratrix of his estate, filed her petition against the Galveston, Harrisburg & San Antonio Railway Company, claiming $15,000 compensatory damages, and $5,000 exemplary damages, on the ground that her husband, through neglect of the company, lost his life while being transported on its train.

Appellee filed its answer, containing a general denial, and pleading further that if Burton came to his death by an accident on defendant's road, or the Mexican & Pacific extension thereof, that such accident occurred on that part of the extension which was not under its management and control, but that the part of the road and the

train on which Burton was riding at the time of the accident were in the hands of the construction contractors; that it was used and controlled by the contractors; that the train was a construction or supply train, on which no passengers were carried or permitted to be carried under the regulations of the company; that Burton was not upon the train by authority of any of its officers or agents, but that any ticket or pass which Burton may have had was issued or given to him by the construction contractors, and that the company was in no way liable or responsible for the accident or injury to said Burton.

Verdict and judgment for the defendant. The errors complained of appear from the opinion, as do the essential facts.

*Shook & Dittmar*, for appellant.

*Waelder & Upson*, in regard to the depositions, cited: Weeks on Depos., § 285, p. 325; citing Williams *v.* Rawlins, 33 Ga., 117, and Abbot *v.* Pearson, 130 Mass., 193; R. S., arts. 2223 and 2224.

On the liability of the company for damages, they cited: Cunningham *v.* I. & G. N. R. R., 51 Tex., 509; 2 Redf. on Railways, 503, § 129 *et seq*.

STAYTON, ASSOCIATE JUSTICE.— The appellant having filed interrogatories to take the deposition of the witness Monroe, the appellee filed cross-interrogatories, after which the appellant took out a commission to take the answers of the witness, but failed for reasons satisfactory to herself to take the deposition. The appellee then took out a commission and took the deposition of the witness on the same direct and cross-interrogatories. Motion was made to exclude the deposition upon the ground that the appellee had no right to take out a commission and take the deposition under the existing facts.

We are of the opinion that the objection was not well taken and that either party had the right to take the deposition of the witness after the direct and cross-interrogatories were filed. Any other course might lead to great wrong. A person desiring to avoid the testimony of a witness whom he knew would testify favorably to his adversary, if the rule was as contended for by the appellant, could file just such interrogatories as would bring out the evidence desired by his adversary, and, upon the same being crossed, take out a commission and put it in his pocket, never intending to take the deposition, which, but for his apparent preparation to take, his adversary would have obtained. We do not wish to be understood as intimat-

ing that there is anything in the record in this case tending to show that the appellant was not acting in good faith at the time she filed interrogatories, and at the time she sued out a commission, and we refer to what might be done under such a practice as is contended for by the appellant for the purpose of illustrating the impropriety of such a rule.

We think that either party, after direct and cross-interrogatories have been filed in a case, with notice of intention to take the deposition given, has the right to take the deposition. That the same rule should apply in such case as applies to the right of a party to read a deposition taken by his adversary, if taken on cross-interrogatories which he has filed.

Neither the fact that the officer who took the deposition of the witness had an office in the same room as the attorneys for the defendant, nor the fact that the officer who took the deposition was the attorney for the defendant in some other cases, gave any sufficient ground for rejecting the deposition, it not appearing in any way that the officer was interested in the cause or its defense.

The husband of the appellant was in the employ of Monroe, who was a contractor, engaged in building the extension of appellee's railway; the terms of his contract, however, are not made to appear. There is testimony tending to show that the railway company was operating that part of its road on which the derailment took place from which the death of the appellant's husband occurred, although it had not received the road from the contractor, and there is also evidence tending to show in general terms that this part of the railway was under the exclusive control of the contractor, Monroe.

It appears that the conductor and engineer of the derailed train were employed and paid by the railway company, which alone had the power of selection and discharge. It also appears that it was usual for the company to discharge any of its employees when complaint of misconduct or inefficiency was made by the contractor.

There is some evidence tending to show that the conductor of the train on the day it was derailed, although there was no regular passenger train on that part of the road, received fare for the transportation of passengers, which was contrary to the regulations of the company. The husband of the appellant was traveling on a pass, which was as follows:

"Office of Monroe & Co., Contractors,

"End of Track, Texas, Sept. 7, 1881.

"*Cond't Supply Train:*— Please pass bearer to and from San Antonio.                  W. N. Monroe."

The derailed train was the property of the appellee, and its principal business evidently was to transport such material as was needed in the construction of the road from Lacoste station west to Hondo switch, at which place it was received and distributed by a locomotive and train under control of another conductor and engineer, as the road advanced westward.

The inference from the record is that the railway company, in making terms with the contractor, had agreed by its own trains, operated by employees of its own selection, and in its pay, subject to be discharged alone at the will of such of its own officers as had confided to them that power, to transport from San Antonio west such material and supplies as were necessary to the proper construction of its road and the support of the contractor and his employees; or that the railway company had contracted to furnish trains so manned to the contractor, with which he might, under his own control, transport such material and supplies as might be needed. To whom the material and supplies necessary to the construction of the road belonged does not appear.

On the trial the court instructed the jury:

3. "If you believe from the evidence that Judy Burton was the wife of King Burton, and that said King Burton lost his life in manner and place stated in plaintiff's petition, and that Burton's death was caused by the negligence of the employees of defendant, as alleged, you will find for the plaintiff," etc.

4. "If, however, you find from the evidence that the defendant had no authority or control over the section of the road where the said Burton was killed, but that said section of the road was under the control of the contractor, and the train upon which the said Burton was killed was a supply and construction train under the said Monroe's exclusive control as a construction contractor, you will in that event find for the defendant."

The charge given at the request of defendant instructs the jury that "if the train was a construction or supply train under the control of the contractor, then the defendant is not liable, although the conductor and engineer running the train were employees of the railroad company."

The plaintiff requested the court to instruct the jury: "It is a general rule of law that a principal or master is civilly responsible for wrongs committed by his agent or servant while acting about his business. The term servant, as used here, is not restricted to persons engaged in menial service; it is applicable to any relation in which, with reference to the matter out of which an alleged wrong

has sprung, the party sought to be charged has the right to control the action of the person doing the alleged wrong, and this right to control is the conclusive test by which to determine whether the relation of master and servant exists; the right to control the conduct of another implies the power to discharge him from the service or employment for disobedience, and accordingly the power to discharge is said to be the test by which to determine whether the relation of master and servant exists." This was refused. The charge thus asked was copied literally from Thompson on Negligence, 892.

It is urged that the charge given by the court was too general, and also misleading; that the charge given at the request of the defendant was erroneous; and that the charge requested by the plaintiff should have been given, in order that the jury might have some rule by which to determine what the true relation between the railway company and those persons operating its train was.

The charge in every case should be such as to enable a jury to know what the law applicable to the facts of the particular case is; and the more clearly that is stated to the jury, the better the charge, if the rule which forbids a court to charge on the weight of evidence be not violated.

If there was negligence resulting in the death of appellant's husband, that negligence was, under the facts in proof, the negligence of the engineer or conductor of the derailed train; and the question of relationship which they bore to the appellee at the time was one of the most important in the case. This was recognized by the court in the third charge given, in which the jury were informed the plaintiff was entitled to recover if the injury resulted from the negligence of the employees of the defendant. There was nothing in the charge, however, which informed the jury what would constitute those engaged in operating the train the employees of the railway company or the employees of the contractor. As to that, the jury were left to draw their own conclusions, unaided by the charge of the court.

There is no doubt, under the evidence, that the engineer and conductor, and others engaged in running the train, were selected, employed and paid by the railway company, and that they could be discharged alone by some of its own officers empowered by it to act in this respect; cause for the discharge of these persons could be made known to the company by the contractor, and upon his representations they would ordinarily act. This would evidence that while the company withheld from the contractor one of the essential rights of a master, he was made its servant, in so far as to

give information of misconduct, upon which, instead of its own knowledge acquired through its own officers, the employee would be discharged. Nor is there any doubt, from the evidence, that the train which was derailed belonged to the railway company, as did the road on which the train was, even though it had not been formally received from the contractor.

Such a state of facts, unexplained by proof of facts which would in legal effect make the engineer and conductor the employees of the contractor, would entitle the plaintiff to recover, if the injury of which she complained was the result of the negligence of either or both of these persons. Shearman & Redfield, 71; Joyce v. Capel, 8 Carr. & Payne, 370; Norris v. Kohler, 41 N. Y., 44; Scott v. L. & St. K. Docks Co., 3 Hurl. & Colt., 596; Byrne v. Boadle, 2 Hurl. & Colt., 722.

To rebut this *prima facie* case rested with the defendant; was it enough for this purpose to show that for certain purposes the contractor had an exclusive control over that section of the road, or to show that the contractor, for such purposes, had an exclusive control over the construction train? We think not.

How far the train was under the exclusive control of the contractors will best appear by the insertion of the material parts of the testimony of Monroe, a contractor. He said: "The train on which he was killed was a supply train, under the control and management of the contractors who were building and constructing the road. . . . Frank Fanning was the conductor. Don't remember the name of the engineer. They were running the train for the contractors, hauling material and supplies for them and under their directions. . . . I did have the right over that part of the road, the same that any contractor building a railroad has, the right to order and run trains for material and supplies, when the trains should run and where, and in fact I had the general management and control over the supply trains on that part of the road under construction. . . . The contractors building the road had charge of the road at the time he was killed. It was used for running supplies and material for the purpose of building the road, for supplying the contractors with supplies and material. I had the ordering and control of it for hauling supplies and material."

Anderson, the paymaster of the railway company, on this point testified: "The supply trains were furnished the contractors and they were responsible for them; this was the regulation. The trains from San Antonio west were in charge of the contractor at the time of the accident. . . The train was the property of the

company, and the men running it were in the employ of the company, but the train itself was under the control of the contractor at the time of the accident."

If the contract between the railway company and the contractors was that the former, by its own trains, run by its own employees, undertook to transport for the contractors such material and supplies as might be needed in the construction of the road to be built, then the railway company would be responsible to any one not an employee of the company for an injury received through the negligence of those operating the train; for those thus engaged would certainly be the servants of the company, even though the contractors may have been authorized to determine when, where and to what extent material and supplies should be transported, and to that extent to control the trains and employees of the company.

If the contract was that the railway company should furnish certain trains or a sufficiency of locomotives and cars to be manned by men of the railway's own selection, to be paid by it, and subject to be discharged by it alone, to be used by the contractors in the transportation of such material and supplies as would be needed, but to be operated according to the directions and will of the contractors, then there might be some question whether those engaged in operating the trains were the servants of the railway company; but even in such a case, we are of the opinion that, in reason and upon the weight of authority of adjudicated cases, they are and should be considered the servants of the railway company; for in such case it has retained to itself two of the most essential powers of a master — the power to select and the power to discharge (Quarman v. Burnett, 6 M. & W., 499; Michael v. Stanton, 3 Hun, 462; Kimball v. Cushman, 103 Mass., 198; Dalyell v. Tyrer, El., B. & El., 899; Blake v. Ferris, 1 N. Y., 49; Taylor v. W. P. R. R. Co., 45 Cal., 335; Dean v. Branthwaite, 5 Esp., 36; Weyant v. N. Y. & H. R. R. Co., 3 Duer, 362; Pawlet v. R. & W. R. Co., 28 Vt., 299; Thompson on Neg., 892–895; Abbott on Shipping, 55; S. & R. on Neg., 71–75; Wharton on Neg., 177); a power presumably reserved for its own benefit and protection; for the protection of the thing to be used by the servant.

The running of a locomotive, an intricate, valuable and dangerous engine, is not knowingly confided to unskilled men — their selection is a matter of importance to the owner; nor is the management of a train of cars knowingly confided to an unskilled person; and when the right to select and employ the persons who are to operate them is reserved to the owner, while the thing is to be used by an-

other, this is done for the protection of the owner against loss which might result to the thing used or to the business of the owner from an unskilful or negligent use of the thing.

If, for his own protection, the owner reserves, over that which he permits to be used by another, the essential powers of a master, it is but just that he should be held to sustain that relationship when the rights of others, affected by the negligence of those so selected, paid and kept in his employment, are brought in question.

If a locomotive or train had been injured or destroyed through the negligence of those engaged in operating them, what case would the railway company have against the contractors under either of the states of fact which, from the evidence as it was developed, may be inferred to have existed? The reply of the contractors to an action for damages based on such facts would be: "Locomotives and trains were operated by men of your own selection, paid by you, and over whom you gave to us no power to discharge. You retained over those operating them the powers and rights which the master has over his servants, and you must bear the burdens which result from their failure of duty to you." Such a defense would be unanswerable.

If, for an injury resulting as did that under consideration, an action should be brought by the injured person, or by his representatives in case of his death, against the contractors, what would be their reply? It would certainly be: "We were not the masters of those persons who operated the trains; they were selected and employed and paid by the railway company, and we had no power to discharge them. We could direct them what to transport, to what place, and when, but how it should be done, in so far as running the train was concerned, we had no power to control; in reference to that matter, the railway company, for the protection of its own property, operated it by its own servants, and as it does not appear that the injury resulted from any negligence of ourselves or our servants, we are not liable." Such an answer would be hard to meet.

The train may have been "a supply and construction train under the said Monroe's exclusive control as a construction contractor," in so far as, for the purposes of the contractors, it was necessary for it to be, and yet the railway company be responsible for the negligence of its own servants; for its liability must depend on the relationship of those persons to it through whose negligence the injury results, and upon this subject the jury should have been clearly instructed. The broad, general charge given, under the facts in evidence, was calculated to mislead, and ought not to have been given.

The charge given at the request of the defendant, under the facts in evidence, was not only misleading, but was erroneous.

How far both a railway company or other corporation or person, and even an independent contractor doing work for such corporation or person, may each become liable to third persons for torts of persons who hold to each of them a relation such as to render it the right and duty of either to control the employee in reference to a part of the work in which he is engaged, need not be considered in this case.

That neither corporations nor persons are liable for injuries resulting from the negligence of independent contractors or their servants, while engaged in doing work for such corporations or persons, is well settled.

The rule was recognized in Cunningham v. Railroad Co., 51 Tex., 509, which is cited as an authority in support of the charges given in this case. The defense in that case was that the injury resulted while the train was in the exclusive use and control of the contractors engaged in constructing a portion of defendant's road, and operated by the contractor's own servants, agents and employees. The facts of the case are fully stated in the report of the case, in so far as was necessary to a correct understanding of the points considered in the opinion; a reference, however, to the record of that case shows that the persons engaged in operating the train were in the employment, pay and control of the contractors; and under such a state of facts the charge which was given by the court below and approved on appeal was unobjectionable.

It exempted the railroad company from liability, "if, at the time the accident occurred, it (the train) was in the exclusive control of the contractors, and was run and managed by them, their servants, agents or employees." Such is not the effect of the charges given in the case before us, nor are the facts the same as in the case referred to.

The charge requested by the plaintiff and refused, as a whole, contained matters which it would have been error to give, but some charge embracing the substance of the charge set out in this opinion should have been given to the jury.

The view taken of the matters already considered renders it unnecessary to consider the assignments of error which relate to the action of the court below in overruling the motion for a new trial.

For the errors indicated the judgment of the court below is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered May 9, 1884.]