LARSON, *Appellant*, v. THE METROPOLITAN STREET RAILWAY COMPANY.

In Banc, May 9, 1892.

1.  **Negligence:** SUBCONTRACTOR: EXCAVATION: AGENCY. Where the owner of property contracted for an excavation upon it by another "to such general depth" and "extent as may be indicated by the engineer" (or his agent) representing the owner, the latter is responsible for negligent acts of a subcontractor for such work, done under direction of the owner's agent, in respect to the depth and extent of the excavation.

Larson v. The Metropolitan Street Ry. Co.

2. ———: CONTRACTOR: SUPERVISION BY OWNER. Retention of super-
vision of a work, without interfering with the independent action of a
contractor therefor, does not render the owner liable for the acts of
the contractor.

3. **Lateral Support:** EXCAVATION: NEGLIGENCE. The right to
remove the lateral support of adjacent property, carrying buildings,
is subject to the qualification that the excavator shall use ordinary
care to cause no unnecessary damages to such buildings.

4. ———: ———: ———. Where the owner of land, on which such
an excavation is proposed, notifies the adjacent owner of a building
that the excavation will be made "in sections," but afterwards adopts
a more hazardous mode of removing the soil, from which damage
results, without reasonable notice of the change of plan, *held* evidence
to support a charge of negligent excavation.

5. **Agency:** EVIDENCE: RES GESTÆ. Statements made by an agent
during the progress of his agency, respecting its subject-matter, are
*res gestæ*, and, as such, competent evidence.

6. **Practice:** DEMURRER. In reviewing a demurrer to evidence, plain-
tiff should have the benefit of the most favorable view of his case that
the evidence warrants, and of every reasonable inference therefrom.

*Appeal from Jackson Circuit Court.*—HON. TURNER A.
GILL, Judge.

REVERSED AND REMANDED.

ACTION for damages alleged to have occurred by
the negligent removal of lateral support to plaintiff's
building, in consequence of which the latter fell. The
trial court instructed the jury that plaintiff could not
recover, upon which he took a nonsuit with leave, etc.
The plaintiff appealed in due form.

The other facts appear in the opinion.

*Gage, Ladd & Small* for appellant.

(1) A proprietor who makes excavations in his
own land, near the premises of his neighbor, in a care-
less and negligent manner, is liable in damages for
injuries to the building of the adjoining owner, which

were the consequence of his carelessness and negligence in the work of excavation. *Charless v. Rankin*, 22 Mo. 566; *Stevenson v. Wallace*, 27 Gratt. 89; *Moody v. McClelland*, 39 Ala. 52; *Myer v. Hobbs*, 57 Ala. 177; *Shafer v. Wilson*, 44 Md. 269; *Austin v. Railroad*, 25 N. Y. 334; *Quincy v. Jones*, 76 Ill. 231; *McMillan v. Staples*, 36 Iowa, 532; *Dodd v. Holme*, 1 Ad. & Ell. 493; *Foley v. Wyeth*, 2 Allen, 131; Washburn on Easements [4 Ed.] top p. 582, *et seq.*, side p. 430 *et seq.*, Thompson on Negligence, 276; Cooley on Torts [2 Ed.] top p. 707, side p. 595; Wood on Nuisances [2 Ed.] secs. 189, 190. (2) That the work of excavation was carelessly and negligently done, and that the injury to the building was the result, was clearly established by the evidence. (3) Although work has been let to a contractor, this fact will not exonerate a party for whom the work is performed from liability for the negligent acts of the contractor, or his servants, if the right to control or direct the mode or manner of the work in any respect is retained, or if such control be in fact exercised, or such direction assumed. *Speed v. Railroad*, 71 Mo. 303; *Railroad v. Hanning*, 15 Wall. 657; *Heffernan v. Benkard*, 1 Robertson (N. Y.) 432; *Schwartz v. Gilmore*, 45 Ill. 457; *Faren v. Sellers*, 39 La. Ann. 1011; *Brophy v. Bartlett*, 15 N. E. Rep. (N. Y.) 368; *Jones v. Chantry*, 4 N. Y. Sup. Ct. (Thompson & Cook) 61; Wharton on Negligence, sec. 181.

*Pratt, Ferry & Hagerman* for respondent.

(1) The owner of land is not, in the absence of negligence as to the manner of the excavation, liable for an injury to a structure upon adjoining land, if such excavation would not have caused the adjoining soil in its natural state to fall. *Charless v. Rankin*, 22

Mo. 466; *Ward v. Andrews*, 3 Mo. App. 275. (2)
Upon the record in this case it must be said that the
soil in its natural state would not have fallen, and, if
there was negligence in the manner of excavating,
there was no liability. *First.* The undisputed
evidence shows that the soil in its natural state
would not have fallen. *Second.* The cause of action
is for negligence in the mode of excavating; under such
a charge there could be no recovery for an interference
with the support of the soil, even though the proof
warranted it. *Ward v. Andrews*, 3 Mo. App. 275.
(3) There was no evidence tending to show negli-
gence. *First.* The falling of the building raises no
presumption of negligence. *Ward v. Andrews*, 3 Mo.
App. 275; 1 Thompson on Negligence, 276–7. *Second.*
In the absence of a duty there can be no negligence.
*Ward v. Fagin*, 14 S. W. Rep. 738. *Third.* It may
well be doubted if the charge in the petition would
warrant a recovery on the ground that the excavation
should have been done in sections and walled up
before further excavating, and the work so con-
tinued. *Waldhier v. Railroad*, 71 Mo. 514; *Reed v.
Bott*, 100 Mo. 62. *Fourth.* The excavator is, at most,
only required to give notice of his intention, so that
the adjoining proprietor may have an opportunity to
protect himself. 2 Shearman & Redfield on Negli-
gence [4 Ed.] 701; 1 Thompson on Negligence, 276–
278; Washburn on Easements [4 Ed.] 444; *Lasala v.
Holbrook*, 4 Paige Ch. 169; *Shafer v. Wilson*, 44 Md.
269; *Charless v. Rankin*, 22 Mo. [566. *Fifth.* The
duty of protecting his own building or having the
work done in sections falls upon the adjoining pro-
prietor. Authorities last cited, *supra; Peyton v.
London*, 9 Barn. & Cress. 275; *Walters v. Pfiel*, 1
Moody & Walk. 362; *Massey v. Gryder*, 4 Car. & P.
161. *Sixth.* Plaintiff had full knowledge, and negli-

gence cannot be predicated upon failure to give notice. *Charless v. Rankin*, 22 Mo. 566. (4) The work was done under an independent contractor, and any negligence in the manner of doing the work cannot be charged against defendant. The power of selecting servants, which is the foundation of *respondeat superior*, was lacking. According to the terms of the contract, there is no liability, and the cases upon similar contracts fully sustain this contention. *Barry v. St. Louis*, 17 Mo. 121; *Clark v. Railroad*, 36 Mo. 202; *Dillon v. Hunt*, 82 Mo. 150; *Blumb v. Kansas City*, 84 Mo. 112; *McKinley v. Railroad*, 40 Mo. App. 449; *Blake v. Ferris*, 1 Seld. 48; *Kelly v. Railroad*, 11 N. Y. 433; *Slater v. Mersereau*, 64 N. Y. 138, 144.

BARCLAY, J.—Plaintiff's case is for damages occasioned by the fall of a building, occupied by him as lessee of the Ackerson estate, in Kansas City, Missouri.

The gist of his petition is that "the defendant wrongfully, carelessly and negligently dug out and carried away the soil, immediately adjoining, and under the west wall of, said building, by means of which * * * the said west wall was made to fall, * * * thereby destroying and damaging the property of plaintiff therein contained * * * to the extent of $3,000."

The answer is a general denial.

The circuit court forced plaintiff to a nonsuit by giving an instruction in the nature of a demurrer to the evidence. It is, therefore, proper to outline the facts upon which plaintiff relies as constituting his cause of action. In so doing, he is entitled to the benefit of the most favorable view of his case that the evidence warrants, and of every reasonable inference therefrom. So viewed the substance of his case is this:

The plaintiff's building was a two-story brick, in which he carried on business. It stood two inches from

the eastern boundary of defendant's property, and extended from the street line some seventy-two feet southward.

The excavation to which the damage is ascribed was made upon defendant's lot close along that boundary line. This line ran at a right angle to Ninth street on which plaintiff's house fronted; both the lots reached southward from the street, one-hundred-and twenty-five feet, to an alley.

The defendant proposed erecting an engine-house on its lot; and, in prosecuting that purpose, contracted in writing with a firm for the necessary excavating and masonry for the foundations.

Some of the terms of that contract will be mentioned later.

The contractors sublet the excavating to another, who began its performance, having a foreman there in charge of a number of workmen and teams.

The defendant's chief engineer occasionally visited the work, but the actual superintendence, under the first contract mentioned, was mainly exercised by Mr. Butts, the engineer's assistant, who remained on the ground. The foreman of the digging party testified that the subcontractor placed him under the orders of Mr. Butts, and that the work was accordingly done as the latter directed.

About the time the excavating began, plaintiff had an interview with Mr. Butts in which he asked, "if he thought it was not dangerous to be taking dirt away" (namely from "alongside of the wall"), to which Mr. Butts replied that "there was not going to be any injury to the building; of course he was going to take it out in sections, and wall it up as they went along." Plaintiff says that that "kind of satisfied" him.. The house fell about a week later. Plaintiff observed the work meanwhile.

A trench, some five feet wide, and from seven to eleven feet deep, was first dug, near defendant's east boundary line, from the street to a point about opposite the south end of plaintiff's building, some seventy-two or three feet. The foundation of the latter was at a depth of eleven feet from the natural surface. They then began at the street line and carried the trench to a further depth of about two feet (a total depth of about thirteen feet) for a distance of twenty-five or thirty feet from the street.

· The concrete and footing stone of defendant's foundation wall were then laid in that space or section. Three days later, according to the testimony of the foreman of the excavators, Mr. Butts directed him to· "take out the remainder of the ditch," and he proceeded to do· so, excavating to the additional depth of twenty-four to twenty-six inches (to correspond with the level of the first section), along the entire building line opposite plaintiff's house, a stretch of forty odd feet from the end of the first section. Mr. Butts was present while this work was being done. The job was begun at half past two o'clock and was finished about half past five o'clock of the same afternoon. That night about ten o'clock a large part of plaintiff's building slipped into the excavation, on account (as is claimed) of that removal of its lateral support; but that portion of the house which faced the masonry work of the first section of defendant's foundation (for a distance of twenty-six feet from the street front) remained in place.

The soil of the locality is that of the Missouri river bottom, a mixture of sand and loam, formed by alluvial deposit.

There was abundant evidence of experienced builders and civil engineers that the customary way of removing such soil for foundations, adjacent to and below that of other buildings, is to take out the earth in

sections of ten to sixteen feet, each, in length, and to substitute the new foundation in each section before opening the next one; that any other mode of doing such work is likely to result as in the present case; but that building in sections involves an expense from eighteen to thirty per cent. greater than the cost of proceeding without subdividing the work in that manner.

On these facts the trial court declared that plaintiff had no cause of action, and he has appealed against that ruling.

I. Before reaching the main issue it will be well to dispose of a subordinate one touching the responsible connection between defendant and the digging force, to whose acts the consequences complained of are ascribed. The defendant claims that those acts were done, in effect, by a contractor independent of its control, and that it is not liable on account thereof.

It is now an accepted rule that supervision of such work may be retained without interfering with the independent action or liability of contractors who have engaged to perform it or subdivisions of it; but in the case at bar the contract, under which the work was done, goes much further. It declares that "the excavation shall be carried to such general depth as may be indicated by the engineer; excavations for the trenches and piers will be made as required from time to time in the progress of the work, and to such an extent as may be indicated by the engineer." Along with this language are statements that the engineer was "in charge of the work," and that men who refused or neglected to obey his orders were to be discharged by the contractors.

Now, the very act complained of here is the digging of the trench too long and too deep in the circumstances. That act is charged as negligence. It was ordered by defendant's representative on the spot,

acting for the chief engineer who had express power to direct "by his authorized agents," as well as personally. The work was done precisely as ordered. Thus it was the exercise of the discretion or judgment vested in the supervising authority, which caused the catastrophe; and for that exercise of judgment defendant must respond. *Lancaster v. Ins. Co.* (1887), 92 Mo. 460; *Bower v. Peate* (1876), 1 Q. B. Div. 321.

II. The chief question in the case is to determine what duty toward plaintiff rested upon defendant in view of the facts.

Very much has been written upon the right of lateral support and its limitations under the English law. It will not be necessary to restate the general principles governing that right. They were discussed very lucidly here, years ago, in *Charless v. Rankin* (1856), 22 Mo. 573, which remains a leading case on that subject. For present purposes it will suffice to say, it is settled law that the unquestionable right of a landowner to remove the earth from his own premises, adjacent to another's building, is subject to the qualification that he shall use ordinary care to cause no unnecessary damage to his neighbor's property in so doing.

We need not inquire how such a principle became engrafted upon a system which traces its origin to the English common law; but that it is there, is evidenced by abundant decisions of which a few leaders, besides that above cited, may be mentioned. *Foley v. Wyeth* (1861), 2 Allen, 131; *Austin v. Railroad* (1862), 25 N. Y. 334; *Quincy v. Jones* (1875), 76 Ill. 240.

The underlying principle of legal ethics on which this rule rests is well stated in *Charless v. Rankin,* above, to be that, "if a man, in the exercise of his own rights of property, do damage to his neighbor, he is

liable, if it might have been avoided by the use of reasonable care."

The reports furnish many illustrations of its application, but we need not stop to emphasize the statement of it by references to them, since its force, in cases of this character, is now fully recognized.

What is the standard of ordinary care which one excavating on his own estate must use to avoid damage to his neighbor's building, is a question of some difficulty. In many localities the subject is regulated by statutes, defining the reciprocal rights of the parties.

It may be stated generally in the absence of a statutory rule that the care required of a party so excavating is that of a man of ordinary prudence in the circumstances of the particular situation; but that statement affords meager aid in determining the exact duty imposed by the rule in its practical application to any given case.

The fact is that the particular circumstances so largely shape and indicate the duty that any attempt to reduce the rule to greater certainty would probably tend to impede rather than to promote the administration of justice.

Quite recently it has been definitely held, following supposed indications in earlier cases, that prior notice to the neighbor whose property may be endangered by an excavation is an essential part of the ordinary care referred to (*Schultz v. Byers* (1891), 53 N. J. L. 442; 22 Atl. Rep. 514; 44 Alb. L. J. 290); but that ruling was accompanied by a vigorous dissent, and can scarcely be considered as settling the point. It is not necessary to decide it in the case at bar, for it is here conceded that plaintiff had ample notice, in fact, of the intended excavation. He also had notice that it was to be made in a particular manner, namely, by removing the dirt "in sections," and walling "it up as they went along."

The defendant's superintendent in charge so stated to him at the outset, when plaintiff suggested the danger of the undertaking; and the former, as a witness in the cause, did not deny the plaintiff's account of that interview.

It was in evidence that that course was the one indicated by ordinary prudence, and by the uniform custom of builders in that locality, in view of the nature of the surrounding soil.

But for that information as to the mode of excavation and construction to be pursued, the plaintiff might have taken effective steps to shore up and protect his building—steps which were unnecessary if the work was done in sections.

We think that plaintiff had the right to rely upon the statement of the superintendent, made during the progress of the work and of his agency (and, hence, *res gestæ*), as to the care which defendant intended to exercise towards the property of plaintiff with reference to which that statement was made. He had the right to assume that the course foretold would be followed, at least until he had notice to the contrary and a reasonable opportunity thereafter to act upon such later notice. We have added this last observation to meet the suggestion of defendant that plaintiff was duly advised that the excavation was not being done in sections. But on this point it appears that one section was first built, substantially as promised; and that the long and dangerous excavation later, to which the fall of the building is charged, occurred between half past two and five o'clock of the afternoon preceding the injury.

On these facts the court cannot justly declare, as a conclusion of law, that plaintiff, in the exercise of reasonable care, was chargeable with notice that the plan of construction, previously indicated by the superintend-

ent, was not to be followed, and should have taken measures of his own for the protection of his domicile.

Nor do we think plaintiff's case concluded by the consideration that the removal of the earth in sections would have involved some additional outlay, and would have lessened, in some slight degree, the strength of its foundation wall.

As to the latter fact, it is not claimed that the utility or value of the wall, for the purposes of its construction, would be in anywise impaired by the building in sections.

As to the former fact of extra expense, we regard it immaterial, in view of the other evidence already alluded to, not to mention broader considerations bearing on that point. *Beauchamp v. Mining Co.* (1883), 50 Mich. 163. If defendant notified plaintiff that a certain mode of proceeding was to be pursued, and thus led him to act upon that hypothesis and refrain from taking steps which would otherwise have been necessary and prudent to insure the safety of his property, the risk of injury to the plaintiff in the premises imposed on defendant the duty toward him of conforming to the plan of work of which it had advised him, or to reasonably notify him of a change in that plan in season to admit of his adopting protective measures of his own.

The evidence tends to prove that no such notice was given, and, in default thereof, the measure of reasonable and proper care on defendant's part, in the circumstances, was that indicated in the statement of the superintendent.

As to whether the same measure of care would rest upon defendant in the absence of the peculiar facts here presented, we are not called upon to say. In the view we take of the case, the fact, that the promised course of construction involved a greater expense than

some other one, can have no material bearing on the rights of the parties.

On the whole case we think it fairly a question of fact whether defendant exercised ordinary care in directing the excavation to be made as it did, in view of the circumstances mentioned, and whether the fall of the building was caused or contributed to by any want of such care. The trial court we consider erred in instructing to the contrary.

The judgment should be reversed and the cause remanded. It is so ordered. Judges BLACK, BRACE, MACFARLANE and THOMAS concur. Chief Justice SHERWOOD and GANTT, J., dissent.

SHERWOOD, C. J. (*dissenting*).—Action for damages growing out of the defendant company digging ditches or trenches for the foundations of an engine-house, then in process of erection, upon its own lot 13, and along the western line of the building and lot which plaintiff occupied as lessee of the Ackerson estate, in consequence of which digging, the west wall of the house, a two-story brick building, in which plaintiff lived, and which he used as a saloon, restaurant and boarding house, fell, and in its fall carried with it other portions of the building, thereby damaging and destroying the personal property of plaintiff therein, and rendering the building untenable.

The petition charges that "the defendant *wrongfully, carelessly and negligently dug and carried away the soil immediately adjoining and under the west wall of said building, by means of which,*" etc.

The building in question was built within one inch of the division line of the two lots, and had so stood for several years. The ditches for the east line of the engine-house were dug quite close to the boundary line between the plaintiff's property, and that of the defend-

ant.    The soil in the locality, the Missouri river bottom, is a mixture of sand and loam.    In doing the work a trench of sufficient depth and width for the proposed foundation was wholly dug upon respondent's lot near the east line thereof.    The trench was first dug out by Collins and his men for a distance of twenty-five feet. The original contractors filled up this space with stone masonry work.    Three days thereafter the subcontractor started to dig the remainder of the trench on the east side of the lot, and the night of the day this work was finished the Ackerson building fell, and plaintiff's property therein was injured thereby.    The evidence shows that the soil of lot 14, in its natural condition, without the additional weight of the Ackerson building, would not have fallen.    And the testimony also shows that so far as the mere fact of excavating was concerned it was done in the proper way; but had the work been done in sections the injury would not have occurred.    By doing the work in sections is meant:    That the excavators would dig sixteen feet or less in length of the trench, and then, before proceeding further, wait till the stone masons had walled up that portion of the excavation, and so continue till the work was completed.    To have done the work in sections would have increased the cost from twenty to thirty per cent., and would have weakened the foundation.    This increased expense would fall upon the contractor.

The testimony also shows that the trenches for the foundation were dug to the depth of some thirteen feet in depth and five feet in width, and the first section of the trench, some twenty-five feet, running backward from Ninth street and along the boundary line, was at once filled in with concrete and footing stones, to a point just below the lower level of the adjoining foundation; but the Ackerson building, when it fell, did not

fall beyond the south end of these footing stones of the new foundation wall.

At the close of the testimony the court instructed the jury that, upon the pleadings and evidence, the plaintiff could not recover; and this action of the court resulted in the plaintiff taking a nonsuit, with leave, etc.

The correctness of the instruction thus given to the jury is the only question necessary for consideration, and this involves the salient question in this cause, whether the plaintiff was guilty of actionable negligence in the circumstances stated.

On the point in hand an eminent text-writer observes: "Of a nature somewhat akin to the easement of light connected with the ownership of a house is that of support, or the right of having one's land and the structures erected thereon supported by the land of a neighboring proprietor. The proposition may be stated thus: A, owning a piece of land without any buildings upon it, has a natural right of lateral support for his land from the adjoining land. This right exists independent of grant or prescription, and is also an absolute right; so that if his neighbor excavates the adjoining land, and, in consequence, A's land falls, he may have an action, although A's excavation was not carelessly or unskilfully performed. This natural right does not extend to any buildings. A may place upon his land; and, therefore, if A builds his house upon the verge of his own land, he does not thereby acquire a right to have it derive its support from the land adjoining it until it shall have stood and had the advantage of such support for twenty years. In the meantime, such adjacent owner may excavate his own land for such purposes as he sees fit, provided he does not dig carelessly or recklessly; and, if in so doing the adjacent earth gives way, and the house falls by reason of the

additional weight thereby placed upon the natural soil, the owner of the house is without remedy. It was his own folly to place it there. But, if it shall have stood for twenty years with the knowledge of the adjacent proprietor, it acquires the easement of a support in the adjacent soil. * * * But this right of a land-owner to support his land against that of the adjacent owner does not, as before stated, extend to the support of any additional weight or structure that he may place thereon. If, therefore, a man erect a house upon his own land so near the boundary line thereof as to be injured by the adjacent owner excavating his land in a proper manner, and so as not to have caused the soil of the adjacent parcel to fall if it had not been loaded with an additional weight, it would be *damnum absque injuria*, a loss for which the person so excavating the land would not be responsible in damages." 2 Washburn on Real Property [5 Ed.] pp. 380, 381, 382, and cases cited.

In 2 Shearman & Redfield on Negligence [4 Ed.] section 701, it is stated: "In exercising his rights over his land, the owner is bound to use ordinary care and skill for the purpose of avoiding injury to his neighbor. Thus, while, as a general rule, he is not bound to continue the support which his land gives to a structure upon, or other artificial arrangement of, adjoining land, and is, therefore, not liable for the natural consequences of his withdrawing this support, yet, in doing so, he must act with such care and caution that (as nearly as by reasonable exertion it is possible to secure such a result) his neighbor shall suffer no more injury than would have accrued if the structure had been put where it is, without ever having had the support of his land. One who digs away land which affords support to an adjoining house ought to give the owner reasonable notice of his intention to do so; and he must allow the

latter all reasonable facilities for obtaining artificial support, including a temporary privilege of shoring up the house by supports based upon the former owner's land." And in the next preceding section the rule is laid down that: "It is not, therefore, necessarily negligence on the part of a land-owner to make a use of his land which inevitably produces loss to his neighbor; for as he may wilfully adopt such a course, and yet not be a wrongdoer, much less is he liable for unintentionally doing that which he has a right to do intentionally."

In another approved writer on negligence, it is stated: "But whatever may be the right of one land-owner to excavate his own soil so as to deprive his neighbor's land of its support, the authorities are agreed that he must exercise what care and skill he can to prevent injury to his neighbor; and, if he inflicts an unnecessary injury upon his neighbor through negligence, he must pay the damages. Thus the authorities are agreed that one who proposes to excavate, or make other alterations or improvements upon his own land, which may endanger the land or house of his neighbor, is bound to give the latter reasonable notice of what he proposes to do, to enable him to take the necessary measures for the preservation of his own property. But, after giving such notice, he is bound only to reasonable and ordinary care in the prosecution of the work. Where the excavation was of itself lawful, and the *gravamen* of the plaintiff's complaint was that it was unskilfully done, it was held incumbent on the plaintiff to show negligence by other proof, than by the mere fact that the walls of his house cracked and gave way. In the view of the court so deciding, this was not a case for the application of the rule, *Res ipsa loquitur*." * * * "If the owner of a house in a compact town finds it necessary to pull it down

and remove the foundation of his building, and he gives notice of his intention to the owner of the adjoining house, he is not answerable for the injury which the owner of that house may sustain by the operation, provided he removes his own with reasonable and ordinary care." 1 Thompson on Negligence, 276, 278.

The court of appeals of Kentucky says: "The proprietor making the excavation cannot be charged with damages for negligence, because he failed to shore up his neighbor's house, in a case where the latter has no right of support in the nature of an easement by grant or prescription; in such case, his neighbor must shore up his own house." *Shrieve v. Stokes*, 8 B. Mon. 453. And there is no obligation on the part of the owner of a building about to be removed to shore up the other buildings. Goddard on Law of Easements [Bennett's Ed.] pp. 43, 44.

In *Shafer v. Wilson*, 44 Md. 268, the same doctrine is distinctly recognized, that proper notice being given to the owner of a building on an adjacent lot, it is the duty of the latter, on receiving such notice, to shore up his own building.

In *Lasala v. Holbrook*, 4 Paige, 169, the same principle finds recognition. To the same effect see *Peyton v. London*, 9 B. & C. 725, and other English cases, and 2 Shearman & Redfield on Negligence, *supra*, sec. 701.

And the duty of the owner of a building on an adjacent lot which may probably be imperiled by the digging for a foundation on his neighbor's lot, to protect his building, is stated to begin *after* he has been notified of the intended improvement, and given an opportunity to protect his own interests.

But, if he has personal knowledge of the progress of the intended improvement, this is tantamount to

notice. This is the doctrine also of this court in *Charless v. Rankin*, 22 Mo. 566.

These cases have been cited, and quotations made from them as preliminary to the present investigation. Let us proceed to apply the result of these authorities to the facts in the case at bar. That the plaintiff was aware of the excavation going on, living as he did in the house which fell and watching the excavation, cannot be questioned, and such actual knowledge has been held to countervail and overthrow the effect of notice when given even under an act of parliament, and before the time specified in the notice had expired. *Peyton v. London, supra.* In that case, having such actual knowledge that the adjoining building was being pulled down, it was ruled that it was the duty of the plaintiffs to shore up their building by supports within that building, and they having failed to do this a nonsuit was directed; and this was so ruled notwithstanding that the adjoining house whose removal caused the litigation had been supported by struts, and that these struts were removed when the house was torn down, it not appearing that any peculiar right or servitude had been acquired by the plaintiffs over the adjoining house or property.

The authorities cited also teach the doctrine that *ordinary* care is the measure of a man's liability, when excavating upon his own lot which adjoins that of his neighbor on which a building stands. Such improving owner, assuming that notice of the intended excavation has been given or that knowledge of it exists, is only responsible for *actual* or *positive* negligence, in the *manner* of *digging* for the foundation of his proposed building. So long as he does not dig carelessly or recklessly he is free from liability, let the consequences be what they will. 2 Washburn's Real Property, *supra*. And, as the plaintiff here was fully cognizant of what

was going on, he was bound properly to shore up, support or protect his own building against any probable danger; it was his clear duty under the authorities, and upon the evidence, for him to do this. As it was the *plaintiff's* duty to protect his own property from destruction, it is clear that a *concurrent* duty to protect the same property could not exist as against the *defendant;* the bare statement of such a premise announces its own conclusion.

But, as the measure of the defendant's care was only *ordinary* care, it did not belong to him, nor was it required of him to use the *same* care that a *prudent* man would exercise in similar circumstances. Such a standard of care was held too high a one on the part of an excavating proprietor in *Charless v. Rankin*, *supra*. And that case is also authority for the assertion that the owner of the servient tenement owes no duty to the adjoining proprietor to guard the interest of his neighbor as he would do as the prudent owner of *both properties;* that he was not bound, for illustration, to go to an increased expense in the progress of the excavation, by building his foundation wall in sections, nor to weaken that wall by such a course, and that a failure thus to build, and thus to endanger the wall, was not *negligence*. Applying these principles to this case, it becomes wholly immaterial whether or not a representative of the defendant company gave assurances to the plaintiff that he would build the remainder of the wall in sections. Such promises or assurance, if it were not the duty of that company, was but a *nude pact*, made without either duty to create or consideration to support it, and, therefore, not obligatory on the defendant company, even granting that the party making such promise was, in reality, the representative of the company. Besides, even after the promise made, the plaintiff was present and knew that the promise as

to building in sections was not performed, but making no effort to protect his property. In any event this action is not brought because of any negligent failure of the defendant company to build the wall in sections or to notify the plaintiff. The very *gravamen of the action is the mere negligent manner in which the trenches for the foundations were dug;* on such a statement, negligence in any other regard obviously would be excluded. *Peyton v. London, supra; Waldhier v. Railroad,* 71 Mo. 514; *Reed v. Bott,* 100 Mo. 62. The judgment should be affirmed.

The foregoing opinion was filed by me in division number 1 of this court, and I still adhere to the conclusions of fact and of law therein announced. The authorities I have cited fully sustain the positions I have taken, and especially is this true of *Peyton v. London, supra,* on the question of pleading, in which the opinion was delivered by Lord TENTERDEN, C. J. I am content to err, if err I do, in such good company. GANTT, J., concurs in this dissent.