## SAMFORD v. PETROLEUM CASUALTY CO.
### No. 2719.

Court of Civil Appeals of Texas. Beaumont.
April 19, 1935.

Rehearing Denied May 1, 1935.

Sanders & McLeroy, of Center, and C. A. Lord, of Beaumont, for appellant.

Davis, Avery & Wallace, of Center, and K. W. Gilmore, of Houston, for appellee.

WALKER, Chief Justice.

This is a compensation case filed in district court of Shelby county by appellee, Petroleum Casualty Company, against appellant, E. Samford, wherein appellee was the compensation insurance carrier, appellant the alleged employee, and Humble Oil & Refining Company the employer. No assignment is before us on the pleadings. The controlling issue in the court below was whether or not appellant at the time of his injury was an "employee." Judgment was for appellee denying appellant's claim for compensation on trial in the lower court to the court without a jury. The following statement is taken from the court's conclusions of fact: On the 15th day of May, 1932, J. M. Oats was in the employment of Humble Oil & Refining Company as its wholesale commission agent for Center, Tex., and the contiguous territory, and continued in that employment until after May 20, 1933. His duties were to sell and distribute in his territory "the goods and products" supplied by his employer, to make the required reports, to collect the money due his employer, to make the required remittances, and to look after all property placed in his charge and to account therefor. His contract was in writing, and read in part as follows: "Agent shall hire, at his expense, such laborers and assistants as shall be necessary, in accomplishing the purposes of his agency hereunder, such laborers and assistants to be his employees, and subject only to his control and direction, and for whose acts and conduct and the loss and damage resulting therefrom agent shall be responsible and liable. Agent shall not employ any person for or on behalf of company except by special written permission of the company, and then only to perform the work so designated in writing. Agent shall pay all expenses incident to the operation and maintenance of said station, including, without limiting the foregoing, expense of gas, electric light and power, telephone, fuel, ice, and water."

Oats was required to employ local commission agents to operate his employer's service stations in Center and contiguous territory, with the limitation that he could employ neither a partnership nor a corporation to operate a service station. We quote as follows from the court's conclusions of fact:

"3. I find that prior to May 20, 1933, Cross-plaintiff, E. Samford, and R. J. Bridges, entered into negotiations with J. M. Oates, seeking to make a contract with Humble Oil & Refining Company, to become commission agents and to operate thereunder the Company's #3129 Service Station, located on Cora Street in Center, Texas, which was

then being operated by one T. L. Patterson, said agency and station to be operated by them as partners; that J. M. Oates informed said Samford and Bridges that the Company would not contract with a partnership or a corporation; that said J. M. Oates agreed to contract such agency to R. J. Bridges with full knowledge of the fact that said Station #3129 would be operated by R. J. Bridges and E. Samford as partners, in which the said J. M. Oates acquiesced, but which he did not make known to Humble Oil & Refining Company.

"4. I find that on May 20, 1933, the Humble Oil & Refining Company and R. J. Bridges entered into a written contract, under the terms of which R. J. Bridges was appointed as commission agent, at Humble Oil and Refining Company's service station #3129, on Cora Street, Center, Texas, which contract was signed by R. J. Bridges, witnessed by J. M. Oates, and forwarded to Houston, Texas, for execution by the company, and there signed for the Company by its Assistant Sales Manager, all of which was well known to and acquiesced in by cross-plaintiff, E. Samford.

"5. I find that on said May 20, 1933, Humble Oil & Refining Company, acting by and through J. M. Oates, 'checked in' R. J. Bridges as commission agent at said station, signing for said purpose, and as evidence of the amount of different sorts of products on hand, and 'inventory of bulk stock and settlement for sales,' and that R. J. Bridges signed the same as 'Service Station Agent' all of which was well known to, and acquiesced in by cross-plaintiff, E. Samford.

"6. I find that on said date, R. J. Bridges, was agent for said company under a former contract, under which he was operating another station in Center, personally, and that cross-plaintiff, E. Samford, took personal charge of Station #3129, under his partnership agreement with R. J. Bridges, and looked after its operation until said Bridges closed out his other station, and moved to Station #3129, which was known to J. M. Oates, but not to any officer or any other agent of Humble Oil & Refining Company.

"7. I find that thereafter, up to and including the 19th day of July, 1933, the said cross-plaintiff, E. Samford, and the said R. J. Bridges as partners, were in possession of and operated said Service Station #3129, which was at all times known to J. M. Oates, and was also known to Howard C. Parker, who, prior to July 19, 1933, succeeded J. M. Oates as Wholesale Commission Agent at

Center, Texas, under contract which contained the same provisions limiting his authority as were contained in J. M. Oates' Contract, as quoted in Finding of Fact No. Two, herein, and was acquiesced in by each of them, but that all the accounts of the Humble Oil & Refining Company with reference to said Station #3129, were kept in the name of R. J. Bridges as agent, and that all inventories of stock and settlements for sales were signed with the name of R. J. Bridges as 'Service Station Agent,' some of the same being signed by R. J. Bridges, personally, and some of them being signed with the name of 'R. J. Bridges, Service Station Agent,' by cross-plaintiff, who, in such instances, wrote thereunder, 'By Samford,' but that no other agent and no officer of Humble Oil & Refining Company knew of such partnership arrangement and partnership operation of said Station.

"8. I find that payment was made to J. M. Oates and to Howard C. Parker for the company's products sold at Station #3129, by R. J. Bridges and E. Samford, Cross-plaintiff, out of their partnership funds, and that when the cash on hand was insufficient for that purpose, the balance of such payments was made by checks on the partnership account of said Bridges and Samford, some of which were signed 'Bridges and Samford,' and some of which were signed by 'Samford and Bridges' and which checks were given, sometimes by one, and sometimes the other of the partners.

"9. I find that Humble Oil & Refining Company derived no direct profit from the garage business which Bridges and Samford conducted in connection with this service station, nor from the income they derived from washing cars, greasing cars, and fixing flats, other than the profit from the sale of products, used in grease jobs; but these activities were important, and indirectly profitable to said company, in that they served to attract people to the station, who, while there, would buy oil and gas, and thereby increase the sales, and that, recognizing such fact, J. M. Oates, agent, shared with Samford and Bridges the cost of an advertisement in a local newspaper, dated May 25, 1934, which is here quoted, to-wit:

" 'Announcement

" 'We announce with pleasure that we have assumed management and operation of the Humble Service Station across from the telephone office on Cora Street.

" 'We are handling all varieties of Humble Products, including that famous 997 motor

oils, auto accessories, and all else that is sold at a modern service station.

"'Our Tire Repair Service Is the Best, and you already know the Quality of Rogers Bridges auto repair service. You will find him at the above location, anxious to do your work right.

"'Then you will really have to try one of our washing and greasing jobs to appreciate our high grade work in that line.

"'Samford & Bridges

"'Ewell Samford                    Rogers Bridges

"'Phone 105 for Road Service.

"'Drive in today for service that satisfies.'

"And I further find, in connection herewith, that it was expected by J. M. Oates and Howard C. Parker, agents, that the commission agent would 'service cars'; that is, wash, grease, fix flats, etc., as desired by customers, and they knew that Bridges and Samford, partners, did perform such services for customers at said station, and received payment from customers for such services.

"10. I find that neither J. M. Oates nor Howard C. Parker held himself out as having any greater authority with reference to making contracts with other persons than as defined in the provisions of J. M. Oates' contract, as herein above quoted, and that neither of them did anything with reference to the cross-plaintiff which would have been reasonably calculated to lead him to believe that he had any authority to make a contract with the partnership to operate said service station, which would be binding on the Company.

"11. I find that on July 19, 1933, cross-plaintiff, E. Samford, in the course of his ordinary duties, went back in the garage part of the building in which the service station was being operated, to get a jack to use in 'servicing' a car, which 'Servicing' was to consist of fixing a flat tire, jacking up the front end and greasing some part of the front end of the car, or greasing the transmission, and filling the tank with gasoline; and that when he stooped to pick up the jack, he was struck in the left eye by a piece of steel, flying from a pin which was being driven with a hammer by another person, which missile penetrated the eye, causing the entire loss of the sight of said left eye, and ultimately necessitating its removal."

"15. I find that the Agent's Commission paid by Humble Oil & Refining Company upon the gross sales of products made at said station were paid by checks of said Company, payable to R. J. Bridges, which was known to cross-plaintiff, and that the proceeds of such checks, when received, and collected, were partnership funds of R. J. Bridges and cross-plaintiff, E. Samford, under their partnership agreement."

"18. I find that R. J. Bridges was allowed commissions measured by named percentages of the amount of sales of gasoline, oil, etc. sold for the Humble Oil & Refining Company at said Station No. 3129, all of which sales were made at prices fixed by the company, that he was required to turn over to Humble Oil & Refining Co. the gross amount received by him from sales of its products, with a report of such sales at regular intervals, and that the Humble Oil & Refining Company paid him his commissions, based on the gross amount of sales, at intervals, by its checks made in his favor; and that the agent of the Humble Oil & Refining Company supervised the operation of said station, and were in the ultimate control of the same, for and on behalf of their principal, the Humble Oil & Refining Company, and that R. J. Bridges was an employee of the Humble Oil & Refining Company, and was not an independent contractor.

"19. I find that cross-plaintiff, E. Samford, was not an agent, or employee, of the Humble Oil & Refining Company."

The fact that Samford and Bridges were operating service station No. 3129, Center, Tex., as a partnership was not known to Humble Oil & Refining Company, nor had it ratified Oates' contract with Bridges that it might be so operated, nor was it estopped to deny the binding effect of Oates' contract, nor was it estopped to deny its liability under that contract. We copy in full the trial court's conclusions of law:

"1. I conclude that the award of the Industrial Accident Board, rendered on the 2nd day of January, 1934, should be set aside, cancelled, and annulled, and that judgment should be entered to that effect; and further, a judgment should be entered in favor of cross-defendant, Petroleum Casualty Company, and against the cross-plaintiff, E. Samford.

"2. I conclude that since said E. Samford was not an employee of the Humble Oil & Refining Company, he was not entitled to compensation for his injury from the Petroleum Casualty Company, who carried the compensation insurance for the employees of the Humble Oil & Refining Company.

"3. I conclude, as a matter of law, that J. M. Oates had no authority either expressed

or implied, to constitute cross-plaintiff, E. Samford, an employee of the Humble Oil and Refining Company, by parol agreement, and that no conduct of J. M. Oates and Howard C. Parker, shown by the testimony, was sufficient, as a matter of law, to amount to a ratification on the part of the Humble Oil & Refining Company of the claimed employment, nor to estop said Humble Oil & Refining Company, or its insurer, from denying such claimed employment.

"T. O. Davis, Judge, 123rd Jud. District of Texas, presiding."

Judgment was accordingly entered in favor of Petroleum Casualty Company against E. Samford.

### Opinion.

No assignment is made against the fact conclusions. On the facts found by the trial court Samford was not an employee of Humble Oil & Refining Company. Though it be conceded that Bridges was an employee, Samford was not an employee under Bridges, and Bridges had no right of control over him for the simple reason that Samford was Bridges' partner. As Bridges' partner, Samford knew that Humble Oil & Refining Company had not and would not employ him as a partner with Bridges. Knowing the limitation of the authority of Oats and Parker in this respect, he knew that they could not make him an employee in this relation.

Appellant quotes as follows from Wallace v. Southern Cotton-Oil Company, 91 Tex. 18, 40 S. W. 399, 400: "This case is presented upon the single question, is there evidence in the record sufficient to justify the district court in submitting to the jury the question whether the plaintiff, Henry Wallace, was the servant of the Southern Cotton-Oil Company? If there was such evidence before the jury, the court properly refused the requested charge, although it might be that the trial judge or court of civil appeals would set aside a verdict found upon the evidence. When the evidence is sufficient to make an issue, the question must be submitted to the jury, if one be demanded. The relation that Wallace bore to the cotton company depends upon whether John Davis was the servant of that company, or an independent contractor, engaged in a pursuit free from the control of the said company. If Davis was an independent contractor in the sense that the company had no right of control as to the manner in which the work was to be done, then he was not the servant of the company; and the plaintiff, having been employed by him, cannot recover. Cunningham v. Railroad Co., 51 Tex. [503] 509 [32 Am. Rep. 632]; Bevens, Neg. bk. 1, 312; Congregation v. Smith, 163 Pa. 561, 30 A. 279; Larson v. Railway Co., 110 Mo. 234, 19 S. W. 416 [16 L. R. A. 330, 33 Am. St. Rep. 439]. If, however, the Southern Cotton-Oil Company exercised control over the manner in which Davis was to do the work, or over the means by which it was to be done, or if the persons engaged in the work with Davis were under the control and management of the said company, then Davis was but its employee, and Wallace was likewise the servant of the said company by virtue of his employment by Davis. Bevens, Neg. bk. 1, 312; Burton v. Railway Co., 61 Tex. 526; Bishop, Noncont. Law, § 602; Larson v. Railway Co., 110 Mo. 234, 19 S. W. 416 [16 L. R. A. 330, 33 Am. St. Rep. 439]; [New Orleans M. & C.] Railway Co. v. Hanning, 15 Wall. 649 [21 L. Ed. 220]."

The Wallace Case is not in point. There, Davis was an employee of the company, and the Supreme Court held that Wallace was also an employee "by virtue of his employment by Davis"; here, Samford was not an employee of Bridges, but his partner.

It would be something new in the law to declare Samford an employee of Humble Oil & Refining Company, thereby creating a liability against appellee when Humble Oil & Refining Company had expressly refused to employ him in that relation, had not ratified his employment by Oats and Parker, and was not estopped to deny the employment.

The judgment of the lower court is in all things affirmed.