**WEST LUMBER CO. v. POWELL.   (No. 569.)**

(Court of Civil Appeals of Texas. Beaumont. April 3, 1920. Rehearing Denied April 28, 1920.)

**1. Master and servant ⬅284(2)—Relation, on undisputed evidence, question for court.**

There being practically *no dispute in the evidence,* the question whether plaintiff, injured in his work, was an employé of defendant, or an independent contractor, was not one of fact for the jury, but one of law for the court.

**2. Master and servant ⬅88(3)—Piece worker held not an "independent contractor," but an "employé."**

Plaintiff who, with another, employed and paid by defendant, would one day load defendant's push trucks, with lumber brought by others on a mule truck from its sawmill, each with a specified number of tiers, and the next day push them to, and place their contents in, defendant's dry kiln, he being under the supervision and control of defendant's foreman, and required to so handle the lumber as to keep it out of the way of the saw, and have it at regular intervals in the dry kiln, was, as regards liability for his injury from defect in the kiln, an "employé," and not an "independent contractor," though paid by the truck load.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Employé; Independent Contractor.]

**3. Trial ⬅352(1)—Issue submitted, considered with others, and instruction, in action for negligent injury, held not objectionable.**

Issue submitted in servant's action for injury, Did the door which fell have any fastening by which it could be safely held in place? was not objectionable in form, at least in connection with issues whether defendant was negligent in not having it so fastened, and whether any such negligence was the proximate cause of plaintiff's injury, and instruction that defendant was not negligent, unless it failed to use the care which a reasonably prudent and careful person would have used.

**4. Damages ⬅132(6)—$13,500 for injury to hip and leg, followed by suffering and diminished earning power, held not excessive.**

Considering suffering and diminished earning power, *held,* verdict of $13,500 for injury to man 24 years old, dependent on manual labor, involving displacement and fracture of a hip and shortening of a leg was not excessive.

Appeal from District Court, Liberty County; D. F. Singleton, Judge.

Action by Yancey Powell against the West Lumber Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Huggins & Kayser, 'of Houston, and J. Llewellyn, of Liberty, for appellant.

E. B. Pickett, Jr., and C. H. Cain, both of Liberty, for appellee.

HIGHTOWER, C. J. This cause comes here by writ of error from a judgment of the district court of Liberty county, rendered in favor of defendant in error and against the plaintiff in error for $13,500. The defendant in error, Yancey Powell, who will for convenience be hereinafter referred to as "appellee," filed the suit against the West Lumber Company, the plaintiff in error, who will for convenience be hereinafter referred to as "appellant," seeking to recover damages for personal injuries alleged to have been sustained in consequence of negligence on the part of appellant; the petition alleging, substantially, that appellee was injured while in the performance of his duties as an employé of appellant at its mill at Milvid, in Liberty county. Appellee alleged, substantially, that as a result of the injury he was totally disabled to perform any work that would require any considerable strength, and that his general health was thereby seriously impaired, and that such injuries were and are and will remain serious and permanent, and claimed damages in the sum of $15,000. The specific grounds of negligence were, substantially, that the ·injury was due to the failure of appellant to provide a latch or

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

other proper fastening on a door of one of its dry kilns, at which appellee was required to perform his duties, said door being a very large and heavy one, and that in consequence of such failure said door fell and struck appellee, while performing his duties in the dry kiln, and that such negligence caused his injury. Defendant's answer consisted of a general denial alone. The case was submitted to a jury upon special issues, and the verdict was in appellee's favor for $13,500, and judgment entered accordingly.

[1, 2] The first and second assignments of error raise substantially the same point, and challenge the action of the trial court in refusing to submit for the jury's determination, as an issue of fact, whether or not appellee was an employé of appellant at the time he was injured;. it being the contention of appellant that appellee was not its employé, in the legal acceptation of that term, but that, on the contrary, he was an independent contractor, and that the relation of master and servant, or that of employer and employé did not exist between appellant and appellee. The court declined to submit such issue for the jury's determination, but, on the contrary, assumed, evidently, that the undisputed evidence showed appellee to be appellant's employé at the time he was injured, and that he was discharging the duties of his employment at the time. After carefully analyzing the evidence adduced by both parties relative to this issue, we have reached the conclusion that there is practically no dispute in the evidence, and that therefore there was no issue of fact to go to the jury on that issue, and that the state of the evidence was such as to compel the trial court to treat that issue as one of law, and hold either that appellee was an employé of appellant and in the discharge of his duties at the time of his injury, or that he was an independent contractor. The accident in question occurred on September 12, 1917, and at that time the duties of appellee were as follows:

Appellant was engaged in operating a sawmill at Milvid, and in connection with its sawmill had erected certain dry kilns on its millyard platform, into which fresh or green lumber would be carried for the purpose of being more readily and quickly dried and made ready for use. The dry kiln at which appellee was injured was about 200 feet from the sawmill proper, where the lumber was sawed, and, as the green lumber would fall from the saw, it was placed upon a large truck drawn by a mule and carried out from the saw some distance on appellant's mill platform, and there the mule truck, which was in control of a driver, would be met by appellee and another, who thereupon unloaded the mule truck and placed the lumber taker therefrom on a smaller truck, called a push truck, and this push truck, when loaded, would be placed at some conven-

ient point on a track on the platform, and the mule truck would return to the saw and get another load, and again return to a point on the platform, and again be met by appellee and the other man assisting him, and the same would be again unloaded and reloaded on another push truck, which would in turn be placed at a convenient point on the platform track, and this operation would go on for an entire day; and the next day these push trucks would be moved by appellee and the other man assisting him, and pushed along a track on the platform to the dry kiln, and placed therein for the purpose of drying the lumber, as before stated. For such services so performed by appellee, he was paid 90 cents for each truck of lumber that he so handled and placed in the dry kiln, and the man assisting him was paid the same.

Under his contract of employment with appellant, appellee was required to regularly meet this mule truck, and so handle the lumber as to keep it out of the way and properly distribute it, and, in stacking the lumber upon the smaller truck, it was required of him that it be stacked so many tiers in width and so many tiers in height, etc. In performing and discharging his duties under this contract of employment, appellee was subject to the orders and control of appellant's foreman, a Mr. Brashfield, and if this lumber was not handled and stacked and placed in the dry kiln in accordance with the foreman's instructions and orders, and according to appellee's agreement, then appellant's foreman had the right and authority to discharge appellee because of his failure, if any, to so comply. The trucks themselves, by means of which the lumber was handled by appellee, belonged to appellant, and were under the exclusive control and management of appellant, and appellee and his assistant or partner, as some of the witnesses called him, were paid on regular pay days, when all other employés were paid by appellant, and were paid by the same paymaster, and at the same place where other employés were paid, and the same bookkeeper of appellant, who kept the time of all its employés, also kept the books relative to appellee's compensation, and, in short, the only difference that could possibly be claimed to exist between appellee and any other ordinary employé at appellant's mill, in so far as their relations to appellant are concerned, was that appellee and the other men doing the same work he was doing were paid so much per truck for each load of lumber handled and placed in the dry kiln, while other employés were perhaps paid by the day or some other period of time.

We say that the foregoing statement is a sufficiently full and fair and complete statement of the material facts, as shown by the evidence in detail, necessary to be shown in

disposing of the assignments under consideration, and it is appellant's contention that these facts raise the issue, if they do not compel a finding, that appellee was an independent contractor at the time he was injured, and was not appellant's employé, and that there was no relation of master and servant between them.

In the case of Cunningham v. Railroad Co., 51 Tex. 510, 32 Am. Rep. 632, the Supreme Court, among other things, used this language:

"In the first relation, that of master and servant, the master has the right to direct the conduct of the servant and the mode and manner of doing the work, and hence his corresponding liability for an improper execution of the same. Wood on Master and Servant, § 281.

" 'He is deemed the master who has the supreme choice, control, and direction of the servant, and whose will the servant represents not merely in the ultimate result of the work, but in all its details.' Shear. & Red. on Neg. § 73.

"In the second relation, that of employer and independent contractor, there is no such control and direction by the employer over the servant in the details of the work.

" 'The true test * * * by which to determine whether one who renders service to another does so as a contractor or not, is to ascertain whether he renders the service in the course of an independent occupation, representing the will of his employer only as to the result of the work and not as to the means by which it is accomplished.' Shear. & Red. on Neg. §§ 76–79."

In the case of Kampmann v. Rothwell, 107 S. W. 120, it was said by the San Antonio Court of Civil Appeals:

"An independent contractor is one employed to perform certain work the details of which are completely within his control and discretion; but if the details of the contract are to be completed under the control of the persons employing him, and according to their direction, then the person doing the work is not an independent contractor, but an agent, servant, or employé."

The opinion cites with approval Cunningham v. Railroad, supra, and Burton v. Railroad, 61 Tex. 526, and Wallace v. Cotton Oil Co., 91 Tex. 18, 40 S. W. 399. And the rule for determining who is an independent contractor, as stated in 26 Cyc. 1546, is as follows:

"An independent contractor is one who, carrying on an independent business, contracts to do a piece of work according to his own methods, and without being subject to control of his employer as to the means by which the result is to be accomplished, but only as to the result of the work. Generally the circumstances which go to show one to be an independent contractor, while separately they may not be conclusive, are the independent nature of his business, the existence of a contract for the performance of a special piece of work, the agreement to pay a fixed price for the work, the employment of assistants by the employé who are under his control, the furnishing by him of the necessary materials, and his right to control the work while it is in progress except as to results. The test of the relationship is the right to control. It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent."

Now, let us consider the facts in this case in the light of the foregoing authorities, and see whether such facts would warrant a holding that appellee, at the time he was injured was not an employé of appellant, in the legal acceptation of that term, but, on the contrary, was an independent contractor; and these facts show, first, that appellee was to load the lumber that he was handling on the push trucks furnished for that purpose by appellant, and that he was to stack this lumber so many tiers high and so many tiers wide on these trucks, and he was then to push these trucks out of the way on the platform, and after this was pursued for a day, according to the most definite testimony, these push trucks so loaded were to be shoved or pushed by appellee and the men assisting him into appellant's dry kiln and there placed as required by appellant.

The only reasonable deduction from the evidence is that in doing his work thus far appellee was under the supervision and control of appellant's foreman, Brashfield, and the testimony further shows, without dispute, that in the event appellee should fail to perform his duties as he was required, appellant's foreman not only had the right to discharge him, but would do so; that this lumber was required to be so handled by appellee as to keep it out of the way of the saw, and in such manner as to have it in the dry kiln at regular intervals, in doing all of which he was subject to the orders and direction and control of appellant's foreman; that appellee did not employ, and did not have the authority to employ, assistants in performing his duties, but the assistant furnished him was employed and furnished by appellant and paid by appellant, and over this assistant appellant had no control or direction whatever. It is true, however, that appellee was to be paid for his services so much for each truck of lumber handled by him, which constituted a fixed price for his work; but this is the only essential element in determining the issue of independent contractor present in this case, and this element alone was not, of course, sufficient to constitute appellee an independent contractor, as claimed.

As authority for its contention in this connection, appellant relies upon the case of Wallace v. Southern Oil Co., 91 Tex. 18, 40 S. W. 399, which is the same case we have alluded to as being reported in 91 Tex. 18, 40 S. W. 399, supra. We have carefully considered this case, and, without discussing it,

we conclude that it does not sustain appellant's contention that the facts of the instant case were such as constituted appellee an independent contractor, or even raised that issue. Therefore the first and second assignments of error are overruled; we holding that the facts in this case showed, without dispute, that appellee was an employé or servant of appellant, and that therefore there was no issue in that connection for the jury's determination.

[3] The third assignment complains that the trial court erred in submitting issue No. 1 to the jury, for the reason that, as submitted, it was an incomplete and unfair presentation of the issue, and was upon the weight of the evidence. Issue No. 1, as submitted by the court, was as follows:

"Did the door which fell upon and injured plaintiff, at that time, have any latch or fastening by which it could be safely and securely held in place?"

To this issue the jury answered, "No." Appellant's proposition under the assignment is as follows:

"The issue as joined by the evidence of defendant in error and plaintiff in error was not whether the door, which fell on plaintiff, had any latch or fastening by which it could be safely and securely held in place; but this was the issue: Was the method in use by plaintiff in error at the time of the accident for holding the kiln doors in place such a method as a man of ordinary prudence would use? The issue as submitted was therefore an unfair and inapplicable presentation of the issue, and was upon the weight of the evidence."

The negligence attributed by appellee to appellant was stated in appellee's petition as follows:

"That the said door which fell upon and injured plaintiff, as above alleged, was about 16 or 18 feet square, and weighed about 1,000 pounds or more, and the defendant carelessly and negligently had same standing in an upright position, so as to serve as a door at one end of the dry kiln; but the same was placed in that upright position without having any latch or fastening attached thereto for the purpose of securely holding it in place and the only effort or provision made by defendant to keep it from falling was a small stick or plank set against the door to prop it and such prop was weak, unsafe, insecure, and wholly insufficient, all of which the defendant well knew, or by the exercise of ordinary care and diligence could and would have known of, and by the exercise of ordinary care and diligence could and would have so latched or fastened the door as to make it safe and secure, and thus could and would have avoided all danger of its falling."

It will be readily seen that special issue No. 1 embraced the very grounds of negligence alleged by appellee to have been the proximate cause of his injury, and the evidence was sufficient to call for the submission, and there was no error in the court's action in that respect. And as to the further contention, that the form of the issue was upon the weight of the evidence, we must say that we are entirely unable to agree with appellant, and the assignment is overruled. We note, however, that the trial court submitted to the jury, at appellant's request, the following special charge:

"Gentlemen of the Jury: The defendant, West Lumber Company, could not be guilty of negligence in this case, unless it failed to use that degree of care which a reasonably prudent and careful person would use under similar or like circumstances, and therefore you are charged that, if you believe that defendant used the degree of care which a reasonably prudent and careful person would have used under similar or like circumstances, when it made use of the method it did in maintaining its doors to its dry kilns as it did, then you will answer question No. 2 submitted to you, 'No.'"

Question No. 2, which the court submitted, was as follows:

"Question No. 2: If you answer 'No' to the foregoing question No. 1, then answer this question: Was the defendant, West Lumber Company, guilty of negligence in failing to have a latch or fastening for said door by which it could be safely and securely held in place?"

To this question the jury answered, "Yes." Question No. 3 submitted to the jury was as follows:

"Question No. 3: If you have answered 'Yes' to question No. 2 then answer this question: Was such negligence if any, on the part of the defendant, West Lumber Company, the proximate cause of the injury received by the plaintiff, Yancey Powell?"

To this question the jury answered, "Yes." So that, if it should be conceded that the form of issue No. 1 was objectionable, as first contended by appellant, still we think that the special charge just quoted was sufficient to fully protect appellant and precluded any possible prejudicial result.

The fourth assignment further complains of the court's action in submitting issue No. 1, the contention being that the same was a mere abstract statement of a principle of law, and was not applicable to any issue in the case, and that, as given, the same was calculated to confuse and mislead the jury, to appellant's prejudice. What we have already said with reference to the third assignment also overrules this one.

[4] By the fifth assignment appellant complains that the verdict of the jury was grossly excessive, so much so that this court should hold that the jury was actuated by passion and prejudice against appellant, or by some other improper motive or influence, and should therefore set the verdict aside.

After a careful analysis of the entire evidence in this case, we have concluded that this assignment cannot be sustained. The evidence shows that at the time of his injury, appellee was 24 years of age, and was a stout and healthy man; that he was, according to defendant's own foreman, a very capable and competent employé, and one of the best in appellant's mill. He was earning, at the time of his injury, on an average, $2.50 per day, and for the very same character of work, other employés of appellant were earning, at the time of the trial of this case, from $5.50 to $6.00 per day, and none of them more capable or competent than was appellee at the time he was injured. It is further shown from the evidence, practically without dispute, that appellee, since the injury and up to the time of the trial, had not been able to perform hard labor of any kind, but was only able to perform light work, and that even as to such light work he is frequently not able to work more than half a day at a time; that appellee has not been able, since his injury, to earn in excess of $15 per month, and sometimes not more than $10 per month. The evidence further shows that his hip was seriously fractured and displaced, and that the fracture had not healed at the time of the trial, which was more than a year after the injury. The evidence further indicates strongly that one of his legs is practically useless and is three-fourths of an inch shorter than the other, and that in riding about on a gentle pony he is unable to control this limb, and it "dangles" or swings loosely at the side of his horse; that he has not been able to walk without the aid of a stick at any time, and on some occasions he is unable to walk without the aid of a crutch. The evidence further shows that he has suffered severe physical pain as a result of his injury, and that he was confined to his bed for perhaps two months or more after the injury; and it was further shown that since the injury, and up to the time of the trial, he, at frequent periods, continued to suffer and is rendered unable at any time to lie on the side of the fractured hip.

While it is true that appellee is an ignorant negro, yet it is also true that this negro was dependent solely upon his manual labor for a livelihood and sustenance; and taking into consideration his age at the time of the injury and the seriousness of the injury, and his greatly reduced earning capacity, and the physical suffering that he has undergone, and which will probably continue, according to the evidence, a part of which is that of two physicians, we are unable to agree with appellant that the verdict should be held excessive, and we overrule the assignment and hold that the judgment should be affirmed; and it will be so ordered.