### KING v. GALLOWAY. (No. 624–4482.)

(Commission of Appeals of Texas, Section B. June 9, 1926.)

**1. Master and servant ⊂⊃316(1)—One controlling in details, as well as result, of work, is master, and not employer of independent contractor.**

One having supreme choice, direction, and control of laborer, who represents his will in all details, as well as ultimate result, of work, is master, and laborer is servant, not independent contractor.

**2. Master and servant ⊂⊃316(1).**

Relationship of master and servant depends, not on exercise of control, but on right to exercise it.

**3. Automobiles ⊂⊃194(2)—One contracting to haul hay for pay by load in seller's truck held servant.**

Where seller of hay, to be delivered by him, told driver of truck furnished by him to keep hauling hay from seller's barns to buyer's warehouse so long as he could make enough loads per week to keep buyer supplied, and would have terminated employment if deliveries were not made to buyer's satisfaction or driver had overloaded truck or run it without water or proper oiling, driver was servant, for whose negligent operation of truck seller was liable.

**4. Automobiles ⊂⊃194(2)—Omission of direction to travel on certain streets held immaterial on issue whether truck driver was servant or independent contractor.**

That seller of hay, to be delivered at buyer's warehouse in certain city, did not tell driver of delivery truck to travel on certain streets therein held immaterial on issue whether driver was servant or independent contractor.

**5. Automobiles ⊂⊃194(2)—Working hours held immaterial on issue whether truck driver was servant or independent contractor.**

That seller of hay did not employ driver of truck to deliver it at so much per day of so many hours, instead of paying him by load, held immaterial on issue whether driver was servant or independent contractor.

**6. Automobiles ⊂⊃194(2)—Business of seller employing truck driver to deliver hay held not to render driver independent contractor.**

That principal business of seller of hay was not sale of products which he agreed to deliver held not to render truck driver employed by him to deliver hay an independent contractor, where seller for several years had hired such driver to haul hay and another product and part of seller's business was sale and delivery of farm products.

**7. Automobiles ⊂⊃194(2).**

One using his own truck to deliver products sold by him, without relinquishing control of its operation, is responsible for driver's negligence.

**8. Automobiles ⊂⊃194(2)—That delivery truck driver was performing manual labor only indicates status of employé, not independent contractor.**

That driver of truck causing injuries was performing manual labor only, in loading and unloading hay and running truck, strongly indicates that he was employé, not independent contractor.

**9. Appeal and error ⊂⊃1114.**

Court of Civil Appeals' judgment, based on erroneous conclusion as to legal effect of undisputed facts, must be reversed, and contrary judgment of district court affirmed.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Action by George S. King against B. F. Galloway. Judgment for plaintiff was reversed, and judgment rendered for defendant, by the Court of Civil Appeals (272 S. W. 807), and plaintiff brings error. Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed.

Thomas, Frank, Milam & Touchstone, of Dallas, for plaintiff in error.

Lively & Dougherty, of Dallas, and Chas. L. Black, of Austin, for defendant in error.

POWELL, P. J. The nature of this case and its result in the trial court have been admirably stated by the Court of Civil Appeals, as follows:

"The appellee brought the suit against appellant for damages for personal injuries alleged to have been sustained as the result of negligent operation of a heavy truck, in a manner violative of the state law and the city ordinances of Dallas, belonging to the appellant and being driven by his employé, J. J. Tillery, in the work of his employment. It was alleged and proven that the appellee was riding on a motorcycle on Main street, going east, and a truck loaded with hay was being driven by J. J. Tillery on Main street, going west. At a point just west of the center of the intersection of Main and Murray street, which runs north and south, the truck and the motorcycle collided, causing personal injuries to appellee. It was alleged, and the evidence in behalf of the appellee shows, that the truck was being operated at a speed of 25 miles an hour, in violation of law, and that the driver of

the truck, without notice or slackening the speed, and without first going beyond the center of the intersection of Main and Murray streets, turned from Main street to the left into Murray street, running diagonally across the streets to the west of the center of the intersection and causing the truck to forcibly strike the motorcycle, then just west of the center of the street intersection.

"The appellant, besides a general denial and a plea of contributory negligence, specially pleaded that J. J. Tillery was not his employé, but was in the relation of an independent contractor operating the truck under a contract whereby J. J. Tillery used the 'truck to transport hay to Dallas for the sum of $1.50 per load.

"The case was tried before a jury on special issues, and their special findings of· fact were to the effect: (1) That J. J. Tillery was not an independent contractor for the delivery of the hay; (2) that J. J. Tillery was guilty of negligence in the manner in which he drove the truck across the street at the time of the collision, and that such negligence proximately caused the alleged injury to appellee; (3) that appellee ·was not guilty of contributory negligence. In keeping with the verdict, the court entered judgment in favor of the appellee for the amount of damages found by the jury.

"The appellant has appealed from the judgment, predicating error exclusively upon the ·undisputed evidence establishing that J. J. Tillery, the driver of the truck, was an independant contractor engaged in the performance of an independent contract, and was not an agent or employé of appellant at the time of the collision and injury. There does not appear to be any conflict in the evidence that bears upon the particular point made on appeal."

The Court of Civil Appeals held Tillery, as a matter of law, to be an independent contractor, and rendered final judgment in favor of Galloway. See 272 S. W. 807.

[1] There are three very exhaustive notes upon this one question now before us. We refer to 19 A. L. R. pp 226–276; 19 A. L. R. pp. 1168–1361; 20 A. L. R. pp. 684–808. These notes are written by that eminent author, Mr. Labatt, who has also written an excellent work on "Master and Servant." Aforesaid notes are very helpful and we have gone through them carefully. The author refers to numerous definitions of an "independent contractor," each of which has been approved by courts which command great respect at the hands of the bar. The definitions vary in many ways. The author, on page 235 of 19 A. L. R., gives his own definition as follows:

"An independent contractor is a person employed to perform work on the terms that he is to be free from the control of the employer as respects the manner in which the details of the work are to be executed."

Aforesaid definition seems to be correct, but it is not quite so full or complete as definitions given by our Texas courts themselves. Our own Supreme Court, in the case of Cunningham v. Railroad Co., 51 Tex. 510

(32 Am. Rep. 632), lays down this very adequate definition:

"In the first relation, that of master and servant, the master has the right to direct the conduct of the servant and the mode and manner of doing the work, and hence his corresponding liability for an improper execution of the same. * *.* 'He is deemed the master who has the supreme choice, control, and direction of the servant, and whose will the servant represents not merely in the ultimate result of the work, but in all its details.' "

The last-quoted definition was followed by Section A of the Commission of Appeals in an able opinion by Presiding Judge German in the case of Shannon v. Indemnity Co., 257 S. W. 522. It has also been followed by this section of the Commission of Appeals in two cases we have recently reported but which have not yet been acted upon by the Supreme Court. Judge German also quotes with approval a definition by Street on Personal Injuries, §§ 11 and 12, as follows:

"No better test can be applied than to say that the relation of master and servant exists where the master retains or exercises the power of control in directing, not merely the end sought to be accomplished by the employment of another, but as well the means and details of its accomplishment; 'not only what shall be done, but how it shall be done.' "

In the case of Wallace v. Southern Cotton Oil Co., 91 Tex. 18, 40 S. W. 399, Associate Justice Brown speaks in the same connection as follows:

"The relation that Wallace bore to the cotton company depends upon whether John Davis was the servant of that company, or an independent contractor, engaged in a pursuit free from the control of the said company. If Davis was an independent contractor in the sense that the company had no right of control as to the manner in which the work was to be done, then he was not the servant of the company; and the plaintiff having been employed by him, cannot recover. Cunningham v̌. Railway, 51 Tex. 509 [32 Am. Rep. 632]; 1 Bevens, Neg. 312; Congregation v. Smith, 163 Pa. 561 [30 ·A. 279]; Larson v. Railway, 110 Mo. 234 [19· S. W. 416, 16 L. R. A. 330, 33 Am. St. ·Rep. 439]. If, however, the Southern Cotton Oil Company exercised control over the manner in which Davis was to do the work, or over the means by which it was to be done, or if the persons engaged in the work with Davis were under the control and management of the said company, then Davis was but its employé, and Wallace was likewise the servant of the said company by virtue of his employment by Davis. 1 Bevens, Neg. 312; Burton v. Railway, 61 Tex. 526; Bishop, Noncont. Law, § 602; Larson v. Railway, 110 Mo. 234 [19 S. W. 416, 16 L. R. A. 330, 33 Am. St. Rep. 439]; Railway v. Hanning, 15 Wall. 649 [21 L. Ed. 220]."

The difficulty in cases of this kind is found in applying the evidential facts to the law in each case. No one fact or circumstance is given controlling effect. There are various facts which tend to show what the

relation really is. If the employer has control of what is to be done (the definite purpose to be accomplished) as well as the material details as to how the work is to be done, then clearly the laborer is an employé or servant of his employer. We will now see whether or not, under the undisputed facts of this case, the hauler of this hay was an independent contractor or a mere servant or employé.

[2] In the first place, it must be borne in mind that on the question of control, the test is not the exercise thereof, but the right to exercise such control. In this connection, we quote from Labatt, p. 240, 19 A. L. R., as follows:

"In every case which turns upon the nature of the relationship between the employer and the person employed, the essential question to be determined is not whether the former actually exercised control over the details of the work, but whether he had a right to exercise that control."

[3] What right of control did Galloway retain (1) as to the purpose to be accomplished by the employment; (2) as to the details of the work? Galloway sold about 100 tons of hay to the Steger Grain Company of Dallas. It was agreed it might be a few tons more or less than said amount. He had to deliver it to the latter's warehouse in the city of Dallas. The hay was located at the time of the sale in his barns at Mesquite. He told Tillery to begin hauling this hay and keep at it so long as he could make as many loads per week as would keep the grain company in hay. For this service, Galloway agreed to pay Tillery $1.50 per load. So it is clear that the former told Tillery what product to haul; where he was to get it; where and when he must take it. He exercised supreme control over the accomplishment of the end to be attained by the hauling. Had Tillery not made deliveries to the satisfaction of the Steger Grain Company, the recipient of the hay, Galloway would have terminated the contract. In that event, Tillery would have breached his contract.

Galloway had supreme control of the means with which the hauling was to be done and also the material details as to how it was to be done. He furnished the truck, gasoline and oil and equipment generally. Galloway testified that if Tillery had overloaded his car, had run it without water in the radiator, or without being properly oiled, he would have corrected him even to the extent of stopping the employment if necessary. So it is clear that Galloway had full and complete control of the handling of his own truck which was being driven by Tillery. As already shown, he controlled the time when the deliveries were to be made. This does not mean the exact hours, but the material points with reference to the time. He controlled the size of the loads, not only that Tillery might not deliver less than an average load, and thereby overcharge him for his work, but also in order that the truck might not be injured. We fail to see any respects in which Galloway lacked material control. We shall refer to certain instances we consider immaterial.

[4] The Court of Civil Appeals says Galloway did not tell the driver he must travel on certain roads in Dallas before reaching the grain company's plant. We do not think that was material in this case. Large stores and factories rarely control the routes of their delivery wagons except in such a way to accommodate the best interests of their customers. If there were several routes Tillery could have taken with equal benefit to his employer, it was immaterial which he employed. Otherwise employers of drivers could escape liability by turning the latter loose as to selecting their routes of travel.

While it is true that Galloway did not direct the streets to be traveled, as just stated, the testimony is that he did reserve the right to direct the towns to which he might send him. The testimony is that he could have taken him off the Dallas work at any time and sent him to other towns with loads.

[5] Again, it is contended that Galloway did not employ Tillery for so much per day and require him to work so many hours each day. It seems almost admitted by his counsel that, if such element had been present, Tillery would have been an employé under the facts of this case. We think this matter, standing alone, is utterly immaterial. Tillery and Galloway both testified that it was more convenient to pay by the load. Galloway said he could check the driver up better in that way. He did not want to watch him and see that he put in so many hours a day. On the other hand, Tillery was janitor of the public school at Mesquite. He could not put in a full day's work and attend properly to his school work. So he preferred to put in such time as he had. In the Shannon Case, supra, the Commission of Appeals used this language in this connection:

"The manner in which the person employed is to be compensated standing alone is seldom of more than minor importance."

We cite a few cases as follows where the employé was held to be a servant although his compensation was upon a basis other than a per diem: Columbia School Supply Co. v. Lewis, 65 Ind. App. 339, 116 N. E. 1; Tuttle v. Embury-Martin Lumber Co., 192 Mich. 385, 158 N. W. 875, Ann. Cas. 1918C, 664; Waters v. Pioneer Fuel Co., 52 Minn. 474, 55 N. W. 52, 38 Am. St. Rep. 564; Clarke v. Bailieborough Co-op. A. & D. Soc., 47 Ir. L. T. 113; Western Indemnity Co. v. Prater (Tex. Civ. App.) 213 S. W. 355, writ of error denied; West Lumber Co. v. Powell (Tex. Civ. App.) 221 S. W. 339, application dismissed for want of jurisdiction.

[6] If the opinion of the Court of Civil Appeals be upheld, any business concern using

deliveries could furnish trucks to drivers and escape liability by using only part of their time and paying them by the load. We think such a result would work a great hardship, and counsel for Galloway seemed to agree with us in oral argument. But they contended that the instant case presented a different situation because Galloway's principal business was not that of selling products he agreed to deliver. We see no distinction in principle. He had for several years hired Tillery to haul not only hay but another product. At least a part of Galloway's business was the selling of farm products and their delivery. While engaged in such business he should be subject to the same rules of law as apply to merchants and others who sell things and must have them delivered before the sale is complete.

[7] It is contended by counsel for Galloway that, if he had ordered a transfer company at Dallas to deliver this hay in the company's own trucks, the company would have been an independent contractor. That is true provided Galloway's only control was the accomplishment of the result of the work. But that is a very different situation from the facts in this case, as we have already shown. When a man uses his own truck in the delivery business, he is, in a large sense, engaged in that very business. Under all the authorities, railways and transfer companies are responsible for the acts of those who drive their engines or trucks.

We think it is very material in this case that Galloway furnished the means of this transportation and retained control over its operation. In this very connection, the Commission of Appeals, in the Shannon Case, supra, said:

"An element of much importance is evidence to the effect that the person contracted with is to furnish a part or all of the materials or appliances for doing the work."

In this same connection, we quote from Labatt on page 778 of 20 A. L. R. as follows:

"In many of the cases in which the relationship of master and servant was held to have been created by the contract one of the specific elements mentioned was that the employer furnished the materials or appliances required for the stipulated work. That fact, therefore, is one of those which are to be regarded as having [tending] to prove that the person employed was not an independent contractor. But such probative significance as it possesses is manifestly overcome, whenever the rest of the evidence points to the conclusion that the employer was not to exercise any control over the details of the work."

Of course, an owner of a truck might turn it over to a driver and relinquish all control over the method of its use. In that event, this would be an important circumstance. But, Galloway relinquished no such rights. People generally do not do so. In this case,

the testimony of Galloway upon this point is clear.

[8] Again, Tillery was doing unskilled work. He was performing manual labor only. He was building nothing. He was producing nothing. He had no means of carrying on any business. He was merely a driver, loading and unloading hay and running an automobile truck. We think these circumstances have much bearing upon determining the relation in a case of this kind. In this connection, we quote as follows from the Shannon Case, supra:

"A circumstance tending to show that the relation is that of contractor and contractee, and not of master and servant, is the fact that the work to be done was such as requires special skill for its proper performance."

Upon this same point, we quote as follows from Labatt in 20 A. L. R. p. 745:

"The fact that the work to be done was such as required special skill for its proper performance is frequently referred to in cases where the contract was held to be independent. There is specific authority for the doctrine that this circumstance is to be regarded as one of those which have some tendency to show that the relation between the employer and the person employed was not that of master and servant. But the present writer has not found any case in which it has been credited with a distinctly differentiating significance; and there are many instances in which it has been wholly disregarded."

While it is not necessary for us, in reaching our conclusion, to rely upon the holding in the case of Jensen v. Barbour, 15 Mont. 582, 39 P. 906, we think it is an interesting decision. We quote from it as follows:

"The question raised by the appellant as to whether the railroad people could, under their charter, delegate the running of their cars to another, is not necessary to discuss, for the reason that we are of opinion that Vaughn was not in the relation of an independent contractor. Neither the franchise, the roadbed, nor the rolling stock were leased to Vaughn or given into his control. He was simply employed by the month to run a car one trip a day. We cannot understand that his position differed materially from that of a driver employed to drive a car 10 trips or 20 trips a day. All drivers are employed to perform certain services, and to some extent they perform them in their own way, as does one's cook, his gardener, or his coachman, as remarked in the case of Brackett v. Lubke [4 Allen (Mass.) 138, 81 Am. Dec. 694], supra. Referring again to the rule as laid down in Bibb's Adm'r v. Railroad Co. [87 Va. 711, 14 S. E. 163], supra the respondent argues that Vaughn represented the will of his employer only as to the result of his work, and not as to the manner of its performance; that is to say, that Vaughn contracted to deliver to his employer the result of putting the car over the track once a day by his own methods. But so it might be argued that one's coachman contracts to produce the result of conveying his master from his house to his office, or wherever he may wish to go; or

one's cook contracts to produce the result of placing before his master his daily food. But such is not the sense in which the word 'result' is used in the rule. We think the word 'result,' as so used, means a production or product of some sort, and not a service. One may contract to produce a house, a ship or a locomotive and such a house, or ship or locomotive produced is the 'result.' Such 'results' produced are often, and probably generally, by independent contractors. But we do not think that plowing a field, mowing a lawn, driving a carriage or a horse car for one trip or for many trips a days is a 'result' in the sense that the word is used in the rule. Such acts do not result in a product. They are simply a service."

This doctrine, at least in part, was approved by the Court of Civil Appeals at Austin in the case of U. S. F. & G. Co. v. Lowry, 231 S. W. 818. We quote from that case as follows:

"The word 'results,' however, is used in this connection in the sense of a production or product of some sort, and not of a service."

It seems there was no application for writ of error in the Lowry Case. Lowry was a traveling salesman and held to be an employé. He was not controlled in every detail as to when and where he might perform his duties. He also received a commission for his services. But, the court held him to be an employé within the provisions of our compensation statutes.

We do not think one would, under all circumstances, be an employé rather than an independent contractor simply because he was performing a menial service. But, as already indicated, we do think it is a strong circumstance showing the nature of his relationship to his employer.

The case of Wallace v. Cotton Oil Co., supra, by our own Supreme Court, is interesting as showing certain indisputable facts which do not, as a matter of law, make one an independent contractor. We quote the undisputed facts in that case as follows:

"The undisputed facts of this case are that the Southern Cotton Oil Company owned, in connection with its oil mill, a machine for baling the hulls of cotton seed used in the work of the mill. The baling machine was situated in another building or shed a short distance from the main building, and was run by the same power that propelled the mill machinery. The cotton company made a contract with John Davis, by which he was to bale the hulls furnished by the mill at three cents per bale of one hundred pounds. The baling machine was to be used by Davis, propelled by the power furnished by the oil company, and Davis was to employ and pay the hands who aided him in the work. The hands so employed by Davis were paid by him, and their names were not placed upon the pay roll of the company. The superintendent of the oil company was to inspect the bales when finished, and to receive or reject them. Control of the machinery for baling the hulls was retained by the cotton company, and, in case it should be out of order, the company was to have its own employés repair it. Davis was a colored man, and irresponsible pecuniarily."

[9] We are clear in our view that in this case Galloway had supreme control of the material details in this contract of employment and that Tillery was his employé. In its opinion on rehearing herein, the Court of Civil Appeals says:

"The evidence in the case being wholly undisputed as to the contract itself, whether Tillery was an independent contractor presented a question for the court."

We think, ourselves, that the facts upon this issue are, in material respects, undisputed. We are of the view that the Court of Civil Appeals has pronounced an erroneous conclusion upon the legal effect of the undisputed facts in the record. Therefore, it is our duty to recommend a reversal of its judgment and an affirmance of that of the district court. See Tweed v. W. U. Tel. Co., 107 Tex. 247, 255, 166 S. W. 696, 177 S. W. 957.

For the reasons stated, we recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.