### FARMERS' GIN CO–OP. ASS'N v. MITCHELL.

No. 4724.

Court of Civil Appeals of Texas. El Paso.

May 10, 1950.

Rehearing Denied June 14, 1950.

Kemp, Lewright, Dyer & Sorrell, Paul W. Mason and Warren & Groce, all of Corpus Christi, for appellant.

Tarlton & Hale and McCampbell, Wood & Kirkham, all of Corpus Christi, for appellee.

PRICE, Chief Justice.

This is an appeal from a judgment of the District Court of Nueces County, 117th Judicial District. Eugene Mitchell as plaintiff sued the Farmers' Gin Co-Operative Association to recover damages for personal injuries alleged to have been caused by a collision between an automobile in which he was riding and a truck driven by an employee of defendant. The trial was before the court with a jury, submission on special issues, and on the verdict returned the court entered judgment in favor of Mitchell, hereinafter called plaintiff, against the Farmers' Gin Co-Operative Association, hereinafter referred to as defendant, in the sum of $50,105.45.

The verdict established that a General Motors 1948 Diesel truck with license number VB 1513, driven by R. W. Edgemon, was involved with the Chevrolet automobile being driven by plaintiff in a collision on July 17, 1948, on State Highway 1665, further that on the date in question said R. W. Edgemon was an employee of the Farmers' Gin Co-Operative Association. In answer to an issue in substance: Did they find from a preponderance of the evidence that R. W. Edgemon was an independent contractor of Farmers' Gin Co-Operative Association in transporting bales of cotton from Farmers' Gin Co-Operative Association at San Juan, Texas, to the Port Compress in Corpus Christi they answered: He was not an independent contractor. In connection with the special issue as to whether R. W. Edgemon was an employee of the defendant, the following charge was given: "In connection with the above special issue you are instructed that by the term 'employee' is meant every person in the service of another under any contract of hire, oral or written, where the employer has the power or right to control and direct the employee in the material details as to how the work is to be performed."

The jury answered it affirmatively.

In connection with the submission of the issue as to whether Edgemon was an independent contractor of defendant, the court charged the jury as follows: "In connection with the above special issue you are instructed that an independent contractor is a person who contracts either oral or written with another to do something for him, but who is not controlled by the other or subject to the other's right to control with respect as to the manner, means and details of physical conduct in the performance of the undertaking."

To the special issue submitting whether Edgemon was an employee of defendant, the defendant objected and excepted to the use of the word "employee" in such issue, and suggests that the term "servant" should be used rather than employee, because the term servant implies the facts in the determination of responsibility separately, whereas an employee does not render his employer liable for his negligence except under limited circumstances and the term employee could include an independent contractor or a special employee over whom the employer would not have or retain the right to exercise control as to the manner and means of accomplishing the ends sought, or controlling the physical conduct of the employee in performing the work contracted for. Further, defendant excepted to the word "power" used therein and that the definition should be

so formed as to only include the right to control and direct the employee, and in substance the definition was erroneous because it did not include the fact that the employer might exercise control over seeing that the end sought to be accomplished was attained, even though he did not have the right to control the details in the accomplishment of such end. To the instruction following the issue submitting as to whether or not Edgemon was an independent contractor for the reason that the court used the term therein "a person who contracts with another" and as used the jury might and probably would be led to believe that by the term "contract" the court means a written contract, whereas the contract may be either oral or written, and such definition should be amended to include the words, following the word contract, with the words "oral or in writing." The verdict found that defendant was guilty of several acts of negligence charged in plaintiff's petition and that each was the proximate cause of the injury complained of. No point of error was urged as to the findings with reference to defendant's negligence, save defendant was not to be charged with the negligence of the driver of the truck.

In its points of error defendant urges that the trial court erred in not entering judgment for the defendant because it was established as a matter of law that Edgemon was an independent contractor; further that it erred in refusing to enter judgment for defendant because there was no competent evidence in the record to show that Edgemon bore such relationship to defendant as to make the doctrine of respondeat superior applicable; that the court erred in submitting issue No. 1 inquiring as to whether Edgemon was an employee instead of a servant; that the court erred in improperly defining the word "employee" in the charge; that the court erred in overruling appellant's objections to the definition of employee because of the inclusion of the term "power or control"; further the court erred in not holding that answer to special issue No. 21 was so contrary to the preponderance of the evidence as to require the verdict to be set aside; the trial court erred in admitting the deposition of the witness Nollner without the production of certain paint samples upon which his testimony was based.

The evidence was undisputed that R. W. Edgemon was, at the time relevant herein, operating three trucks, the title to two of which had been transferred to defendant by Edgemon and registered by the defendant with the State Highway Department. These trucks were engaged in the transportation of cotton from gins operated by the defendant to Corpus Christi to a compress there; that one of these trucks was a Diesel truck for which defendant had signed notes for its deferred payment, and the State Highway Department had issued a certificate of title directly to defendant. Under the contract between defendant and Edgemon, Edgemon was to receive as compensation for transporting defendant's cotton a fixed price per bale, paid the drivers operating trucks, paid for the necessary repairs and for the oil and gas consumed in their operation. There was testimony from the officers and employees of defendant that defendant paid nothing for the transfer of the trucks to it; that when the cotton hauling season was over defendants without consideration transferred the trucks back to Edgemon; that Edgemon paid the approximately $6,000 in deferred payment that defendant had signed notes for as to the Diesel truck involved in the collision. There was evidence that for several years prior to 1948 Edgemon had hauled cotton from the gin to the compress for defendants in trucks registered in his name, but purportedly leased by him to the defendant, that the arrangement was about the same as that for the year 1948 in which the transaction took place which is the foundation of this suit. At a prior time the driver of one of these trucks had a complaint filed against him in a justice court for a violation of the Motor Transportation Act in operating without a certificate of necessity and convenience; that the manager of defendant disclaimed guilt but sent a check for $34 in payment of a fine; later that a driver was again arrested but this time contested

the case and was not convicted. Defendant offered testimony of its officers and employees that later it was decided to have the trucks registered in its name to the end that trouble be avoided as to the operation of the trucks by Edgemon, Edgemon not having the authority to operate same as a carrier for hire. The manager, testifying as a witness, stated that this step was taken to the end that the transportation of its cotton to the gin might be in all respects lawful. This step was taken shortly after the case of Cobb v. Harrington, 144 Tex. 360, 190 S.W.2d 709, was published.

Beyond any question, under art. 911b, Vernon's Ann.Civ.St., Edgemon could not lawfully transport as a carrier for hire the property for defendant over the public highways in the state without a certificate of necessity and convenience from the Railroad Commission. It is conceded that with reference to the transportation involved herein Edgemon had no such certificate of necessity and convenience, and had in no way complied with the law as to operating as a carrier.

■ It is elementary that a certificate of necessity and convenience was not necessary under said art. 911b if the transportation of the cotton was by the defendant, acting through its employees—employees that defendant had the right to control as to the details of the transportation. Cobb v. Harrington, 144 Tex. 360, 190 S.W.2d 709.

This is true by reason of the definition of a motor carrier. See Section 1(g) of said art. 911b.

The operation of the trucks by Edgemon in the manner same were operated would have been a penal offense if Edgemon retained the right to control same. Reavley v. State, 124 Tex.Cr.R. 528, 63 S.W.2d 709.

If he operated same as an employee of defendant, subject to its right of control, the operation would have been a perfectly legal operation. Anderson Clayton & Co., et al. v. State, ex rel. Allred, Atty. Gen., 125 Tex. 453, 82 S.W.2d 941.

■ What has been said is said under the realization that even though Edgemon was operating the trucks unlawfully it would not enlarge the power or right of defendant to control the manner of his operation thereof. The determining element in determining whether a relationship arising by virtue of a contract where one performs work for another is that of servant or independent contractor is does or does not the contract give the employer the right to control as to the details of performing the work. If it does confer such right the relation of employer and employee is created rather than that of independent contractor. If the relationship is that of employer and employee, that is, master and servant, the principle of respondeat superior applies. In other words, the employer is responsible for the negligent acts of the employee when such employee is acting in the scope of his employment. Cunningham v. Internatl. R. R. Co., 51 Tex. 503; King v. Galloway, Tex.Com.App., 284 S.W. 942; Liberty Mutual Ins. Co. v. Boggs, Tex.Civ.App., 66 S.W.2d 787; Ochoa v. Winerich Motor Sales Co., 127 Tex. 542, 94 S.W.2d 416, Opinion adopted; Smith Bros. v. O'Bryan, 127 Tex. 439, 94 S.W.2d 145, Opinion adopted Sup.Ct.

If under the terms of the contract the employer has not the right to control the manner of the performance of the details of the contract and employee is only obliged to achieve the end of the contract for it, in his own manner, then such an employee is an independent contractor. In such case the principle of respondeat superior does not apply, and ordinarily the employer is not responsible for the acts of the independent contractor. There may be an exception to this where the work contracted to be performed in itself inherently creates a dangerous situation to others. This exception, if such there be, in no way has application to the facts here involved. The authorities last above cited are deemed to support the proposition last announced.

■ In arriving at what parties meant and intended by a contract the facts and circumstances surrounding them at the

time of entering into same may be taken into consideration. This, we think, is especially true as to an oral contract. A short time before the contract governing the relationship between defendant and Edgemon was entered into, the officers of the State were questioning the right of Edgemon to operate his trucks on the public highways of the State without obtaining a certificate from the Railroad Commission. Prior to the entrance into the contract one of the drivers had been arrested; defendant acting through its General Manager paid, out of its funds, we presume, a fine imposed upon the driver. It is but fair to say that it assigned as its reason therefor the lack of time to defend the case. It took legal advice as to how to avoid this trouble in the future. In fairness we think it may be assumed that this advice was not to confederate with Edgemon to violate the law, but to see that its cotton was transported in accordance with the law.

A short time after taking this counsel the three trucks involved in the transportation of cotton were transferred to the defendant. Whatever the truth may be as to whether defendant paid anything for this transfer, a complete legal title to the trucks was thereby vested in defendant. Edgemon and the manager of defendant testified nothing was paid. Defendant had a right to possession and control over such trucks. It is true that it was contemplated, perhaps, that after the cotton hauling season was over title should be transferred back to Edgemon. During the cotton hauling season one of the trucks was thought to be unsuitable. Defendant, having title to said truck, surrendered same for credit to an automobile agency, executed its notes for something over $6,000 for deferred payments, and acquired the truck which Edgemon was driving when the injuries were inflicted upon plaintiff through his negligent operation of same—negligent operation incidental to his hauling and transporting cotton to the compress for defendant. There was testimony that Edgemon paid these notes, or in any event paid the defendant. It is a fair inference, we think, that in transferring the trucks to the defendant Edgemon intended to vest the right of absolute control over same in the defendant, further that it was defendant's intent during such time to assume absolute control over such trucks. The contract, we think, is fairly susceptible of the construction that these trucks were to be used exclusively in the prosecution of defendant's business. No better means could have been devised to so vest the lawful right of control over the trucks in the defendant. See Anderson Clayton & Co. v. State, Tex.Com.App., supra.

In the instant case the vendor agrees that for the consideration he will operate these trucks for the vendee. He is to receive a fixed sum, in one case $1.30 per bale, for each bale of cotton transported to the compress; he is to pay for the gas and oil and necessary repairs of the trucks, incurred, of course, in the performance of defendant's work. There is testimony that he did pay for the other drivers used and for the repairs and costs necessary to the trucks' operation and upkeep. However, defendant did pay for the oil used in the operation of the Diesel truck involved in the accident, but it seems Edgemon reimbursed the defendant therefor.

If the contract between Edgemon and defendant was in writing same was not introduced in evidence. Its terms must be adduced from the testimony of Edgemon and the employees of defendant and their acts thereunder.

■. If the holding be correct that the evidence fairly raises the inference that Edgemon surrendered the right to control to defendant over the three trucks conveyed by him to it, then an inference is permissible, we think, that it had the right to determine where and in what manner Edgemon should make use of the trucks. The very purpose of vesting the control of the trucks in the defendant was to prevent Edgemon from being classified as a carrier for hire. It is thought that one operating as a carrier for hire over the public highways of the State is not the employee of one availing himself of his services. The relation between such carrier and his customer is not that of employer and employee. The principle of

respondeat superior does not apply to the relationship of the carrier for hire and its patrons. It may be that the relationship may not be that of employer and independent contractor.

The fact that Edgemon paid his own drivers, paid for the gas and oil and the repairs of trucks and was compensated according to the number of bales transported does not conclusively establish that Edgemon was an independent contractor. See Schroeder v. Rainboldt et al., 128 Tex. 269, 97 S.W.2d 679, Op. adopted by Sup.Ct.

■ We hold that under the evidence it was a question of fact for the jury as to whether Edgemon in driving the truck in question in the transportation of defendant's cotton was subject to the right of control of defendant, or was an independent contractor. Anderson Clayton & Co. v. State ex rel. Allred, Atty. Gen., Tex.Com.App., supra; Zempter Const. Co. v. Rogers, Tex.Civ.App., 45 S.W.2d 763; Humble Oil & Ref. Co. v. Martin, Tex. Sup., 222 S.W.2d 995.

Under the evidence either defendant was engaged in the transportation of its own cotton or was engaged with Edgemon in a conspiracy to enable him to transport the cotton as a carrier for hire in violation of the laws of the State. The jury, under ample evidence, found that defendant was engaged in the lawful transportation of its cotton rather than in an unlawful conspiracy to enable Edgemon to transport same for it as a carrier for hire in violation of the law.

Defendant insists that the registration of trucks in the name of defendant was not evidence that defendant had the right to control same. Cited and disposing of this proposition is Empire Gas & Fuel Co. v. Muegge, 135 Tex. 120, 143 S.W.2d 763. The case is not deemed in point here. In that case the Empire Gas & Fuel Company had nothing to do with registering the truck in its name. Here it was the agreement of the parties that the trucks be registered in the name of defendant.

■ ■Points of error 5, 6 and 7 relate to the manner of submission of the issues as to the status of Edgemon with reference to defendant. No. 5 is to effect that in submitting the issue as to whether or not Edgemon was an employee of defendant the court should not have used the word employee, but should have used the word servant. In our opinion it was not error for the court to use the word employee rather than servant. The issue immediately succeeding this issue was as to whether or not Edgemon was an independent contractor. This, together with the court's definition of employee rendered it crystal clear, we think, that the inquiry was confined to an employee who as a rule the employer had the right to control in the manner of performing the details of the work which he was performing for his employer. Complaint is made of the court's definition of employee, which has been heretofore copied herein. The complaint is the court was in error in using the word "power". It is contended the test of relationship is whether or not the employer has the legal right under the contract of employment to control the employee in the details of the performance of the contract of employment.

■ It is elementary, and conceded by the parties hereto, that the right of control is the determining element in the determination of whether the relationship is that of employee or independent contractor. It is not customary in the definition of the term to use the word "legal" right of control. The use of the word power we think fairly implies legal power of control. It was not, we are sure, and could not be construed in any other way by the jury. Power and right of control were used in the definition as synonyms. Power was the power conferred by law and a right conferred by law. The definition we think was in substantial accord with the usual and customary way of defining the term. If we construe this definition with the definition of an independent contractor the meaning is very clear. King v. Galloway, Tex.Com.App., 284 S.W. 942.

The points of error are without merit and same are overruled.

■ Special Issue No. 21 inquired as to whether or not the plaintiff attempted

to pass the truck which he was overtaking when he was within 100 feet of a bridge or culvert. This issue was a portion of the issue as to whether plaintiff was guilty of contributory negligence. The evidence relied upon was all opinion evidence; estimates made by the witnesses. The plaintiff testified that he was from 75 ft. to 100 ft. from a bridge or culvert when the truck started to pull back or swerve to the left. Witness Boone testified that from the marks on the road that it was about 75 ft. from the culvert when plaintiff attempted to pass the truck. A. F. Mitchell, plaintiff's father, testified that in his opinion it was 100 to 150 feet from the culvert, but that it would be a guess. Under the testimony we hold that the evidence is insufficient to establish as a matter of law that plaintiff attempted to pass the truck less than 100 feet from the bridge or culvert. Further, that the refusal of the jury to find from a preponderance of the evidence that plaintiff attempted to pass the truck within less than 100 feet of the bridge or culvert is not against the great preponderance of the evidence.

■ The 9th point of error is that the trial court erred in admitting the deposition of the witness Nollner without production of certain paint samples upon which his testimony was based. Nollner testified that in his opinion the samples of paint which according to the evidence were taken from the automobile and truck in question were the same substance. His opinion was expressly based on both his physical examination of the samples and his observation that they were of the same color and a chemical analysis made by him. The witness had been requested in his deposition to attach the samples used in making his comparison, but replied that a rule of his department prohibited his furnishing samples. Defendant fails to point out how the admission of this testimony injured it in any way. The only relevancy that we can see that this testimony had was to show there had been a collision between the car plaintiff was driving and defendant's truck. The fourth paragraph of defendant's motion for a new trial is as follows: "The court erred in rendering judgment for plaintiff in this cause for the undisputed evidence shows that R. W. Edgemon, the driver of the truck with which plaintiff's automobile collided, was an independent contractor and therefore this defendant was not liable for the negligent acts found by the jury to have been committed by the said R. W. Edgemon."

If, as assumed by plaintiff, defendant's truck and plaintiff's automobile collided, even though there was error in overruling the objection it was harmless error. However, we do not mean to hold that the court was in error in overruling the objection as made to the testimony in question. 32 C.J.S., Evidence, § 782, pp. 706–707.

The rule as to the best evidence does not seem to apply to anything other than documentary evidence. A sample of paint from the truck should have been readily available to defendant—defendant owned and controlled the truck. No effort was made to obtain a sample of paint from the car driven by the plaintiff. If we be in error as to the admissibility of this evidence the error of the trial court was harmless. Defendant should not have been granted a new trial for the admission of improper testimony as to a fact the existence of which it admits in the motion.

■ Although it was not introduced in evidence before the jury it was shown that Public Liability and Property Damage insurance was carried by defendant on the trucks in question while the title to same stood in the name of defendant. Why this evidence was not admitted before the jury does not appear. However, we do not believe the trial court was warranted in considering same; same not having been introduced before the jury cannot be used to support the verdict. Same is mentioned here only for the purpose if we be in error as to the result to the end that the cause be reversed and remanded rather than rendered.

There is no reversible error in the case. It is ordered that the judgment of the trial court be affirmed.

956

### On Motion for Rehearing.

Careful consideration has been given to the appellant's motion for rehearing, but we still adhere to the views expressed in the original opinion.

It is desired to make one correction therein. The case of Cobb v. Harrington, 144 Tex. 360, 190 S.W.2d 709 was not decided by the Supreme Court until November 14, 1945; rehearing was denied December 12, 1945. This case was not published prior to the ginning season. The Supreme Court affirmed the decision of the Court of Civil Appeals which was decided December 22, 1944, rehearing denied January 19, 1945, Tex.Civ.App., 185 S.W.2d 133. The bound volume of the Southwestern in which the opinion of the Court of Civil Appeals was reported was published prior to June, 1945.

No better way could have been devised to vest the right of control over the operation of these trucks in appellant than to place the legal title in its name. With the title in appellant it had the legal right to operate the same without a certificate of necessity and convenience. If it was not vested with the right of control the carriage was illegal.

The motion for rehearing is in all things overruled.